THE STATE OF NEW JERSEY, DEFENDANT IN ERROR, v.
PAUL HERRMANN, PLAINTIFF IN ERROR.

Argued November 30, 1908—Decided March 1, 1909.

It appears that on the trial of the defendant, indicted for murder,
there was testimony from which the jury might have found that
the degree of defendant's criminality was manslaughter. The trial
judge defined the degrees of murder, said nothing respecting man-
slaughter, and then charged the jury that if they found the de-
fendant guilty, it was their duty to declare the grade of offence,
either murder in the first degree or murder in the second degree.
The defendant was convicted of murder in the first degree. *Held*,
that there was error in thus excluding the degree of manslaughter
from the consideration of the jury.

On error to Middlesex Oyer and Terminer.

For the defendant in error, *George Berdine*, prosecutor of
the pleas.

For the plaintiff in error, *Peter Backes*.

The opinion of the court was delivered by

REED, J. The judgment was upon the conviction of Paul
Herrmann of murder in the first degree for the killing of one
Nikolaj Murmashek, also called Melnik, and hereafter re-
ferred to as Melnik, in the township of Woodbridge, in Mid-
dlesex county. The entire record of the proceedings are certi-
fied to this court under section 136 of the Criminal Procedure
act of 1898.

There is in the case evidence of the following facts: The
wife of Paul Herrmann, the defendant, was related to Melnik,
the deceased. On Sunday, July 7th, 1908, Herrmann came to
Melnik's house, and while he was there, Melnik took him to
task for beating his, Herrmann's, wife. Herrmann became in-
censed at Melnik's censure. On July 10th following, Mary,
one of Melnik's daughters, together with her brother, had gone

to the house where Herrmann and his wife were living with one Harko and his wife. While Mary was still outside of Harko's house Herrmann saw her standing outside and pulled her into the house and into the room where Mrs. Harko was lying, she having recently been delivered of an infant. Soon after this Melnik came in, and seeing his daughter there, was displeased, apparently, for her having left home, and struck her a little blow on the arm with a strap. Then Herrmann said to Melnik, "What do you hit her for? It was no fault of hers. I took her in." Soon after this Mary went home, leaving her father still at Harko's. Some time subsequently, Mary went to bed. After she had done so, Paul Herrmann came to Melnik's house and inquired if his wife was there. Being told she was not, he departed.

After this one Babitski came to Melnik's house and told Mrs. Melnik something which induced Mrs. Melnik and her daughter, Mary, to arise, and presumably dress, and go at once to Harko's house, where Mary, as already remarked, had left her father. When they arrived they saw the father, Melnik, standing in a room with his hands holding his abdomen, and with blood falling down through his fingers. He had received a cut from some sharp instrument, the cut being about six inches long, in his abdomen, which wound turned out to be fatal.

On the trial, Herrmann, the defendant, testified that after Mary Melnik went home from Harko's, leaving her father there, he, Herrmann, was talking with Mitro Burak, who with others, was at Harko's. Herrmann said that he wanted to go to a Polish ball; but Burak said, "Don't go, we will stop over here and go to bed." Herrmann says that while he was talking with Burak, Melnik, the deceased, came from Mrs. Harko's room and went to the kitchen, then into the front room where Herrmann and Burak were. He further says that Melnik made some disparaging remark about Herrmann's mother, and that he, Herrmann, replied that he would do the same thing to Melnik; and that Melnik then grabbed him, Herrmann, by the throat and struck him in the face with his fist; that he, Herrmann, did not know what to do; he could not

breathe and he struck Melnik with a knife. This in brief, was the crucial point in the story of the defendant.

A blow in the face of Herrmann, struck by Melnik, preceding the knife cut, was also testified to by Burak, Kornora and Harko, witnesses for the state. These witnesses, however, testified that the first they heard of anything indicating a quarrel or affray was the blow struck by Melnik, which they described as a blow with the open hand.

From this statement of the testimony existing at the close of the case, it seems apparent that if it be conceded that Herrmann, intentionally killed Melnik, the deceased, yet there were facts from which a jury might have found that there was a reasonable doubt whether the blow that killed was struck maliciously; and in consequence the jury might have found that the degree of Herrmann's criminality was manslaughter instead of murder.

Of course the provocation which will exclude malice must be a physical provocation, a sudden provocation and a provocation adequate to arouse the passions of an ordinary man beyond the power of his control; but it would clearly be a jury question whether a blow in the face, either by the fist or the open hand, would not be sufficient to exclude malice, whether or not preceded by opprobrious words, in a case where such a blow was immediately followed by a counterblow which proved fatal. It would clearly be a jury question unless it appeared that the defendant prepared for, or provoked or used the blow with the fist for the purpose of creating the opportunity to take life. These did not appear as demonstrated facts in this case.

It is true that the learned trial judge was not requested on the trial to define the degree of manslaughter. No exception was taken to his failure to do so; but by the provision of section 136 of the present Criminal Procedure act, where, as in this case, the whole record is brought up, error can be assigned for any judicial ruling which may have prejudiced the defendant, whether an exception to such ruling was sealed or not.

Error is assigned in this case to the neglect of the trial judge to charge the jury and instruct them upon the law respecting the crime of manslaughter. The query then is whether the defendant was prejudiced by such failure of the trial judge, there being in the case evidence from which the jury could have found that the defendant was guilty of manslaughter? The question whether mere neglect to charge a legal proposition not requested or suggested by the counsel for the defendant, can be assigned for error, unless there was some express language employed in the charge which prejudiced the defendant, need not be decided.

In this case there was language employed which must be held to have prejudiced the defendant by excluding from the consideration of the jury the degree of manslaughter. The trial judge, after leaving to the jury the question whether defendant inflicted the wound, and whether death resulted from the wound, proceeded to speak of the degree of defendant's criminality. After defining the degrees of murder, he concluded his remarks as follows: "On this point, too, gentlemen, I charge you that under the law of the state it is your duty, when you render your verdict, if you find the defendant guilty, to declare the grade of the offence, either murder in the first degree, or murder in the second degree. Or, if you find the defendant not guilty, then he is entitled to a verdict of acquittal." The trial judge afterward defined the law of self-defence, but nowhere intimated that if the defendant was guilty, he could be convicted of any degree of homicide other than murder in one of its degrees.

We are constrained to conclude that for this reason there is reversible error.

*For affirmance*—DILL, J. 1.

*For reversal*—THE CHANCELLOR, CHIEF JUSTICE, GARRISON, SWAYZE, REED, TRENCHARD, PARKER, VOORHEES, MINTURN, BOGERT, VREDENBURGH, VROOM, GRAY, J.J. 13.