643 A.2d 591

STATE OF NEW JERSEY, PLAINTIFF–RESPONDENT AND CROSS–APPELLANT, v. ALPHONSO ROBINSON, DEFEN-DANT–APPELLANT AND CROSS–RESPONDENT.

Argued February 28, 1994—Decided July 14, 1994.

478

*Stephen W. Kirsch*, Assistant Deputy Public Defender, argued the cause for appellant and cross-respondent (*Susan L. Reisner*, Acting Public Defender, attorney).

*Deborah Bartolomey*, Deputy Attorney General, argued the cause for respondent and cross-appellant (*Deborah T. Poritz*, Attorney General of New Jersey, attorney).

The opinion of the Court was delivered by

STEIN, J.

In this appeal we consider whether attempted passion/provocation manslaughter is a cognizable crime under the New Jersey Code of Criminal Justice (Code). Defendant, Alphonso Robinson, shot and injured his uncle William Robinson after William assault-

ed him because defendant had failed to repay a debt. A jury convicted defendant of attempted murder, aggravated assault, unlawful possession of a weapon, and possession of a weapon for an unlawful purpose. Defendant appealed his attempted-murder conviction, arguing that he was entitled to a jury instruction on *attempted* passion/provocation manslaughter as a lesser-included offense of attempted murder. The State argued that attempted passion/provocation manslaughter is not an offense recognized by the Code.

The Appellate Division held that attempted passion/provocation manslaughter is a crime contemplated by the provisions of the Code, but declined to reverse defendant's convictions because it found that a charge to the jury on passion/provocation manslaughter "was not clearly indicated by the evidence." 266 *N.J.Super.* 268, 281, 629 *A.*2d 103 (1993). Defendant petitioned for certification and the State cross-petitioned, seeking review of the Appellate Division's determination that attempted passion/provocation manslaughter is a crime cognizable under the Code. We granted both petitions, 134 *N.J.* 486, 634 *A.*2d 532 (1993).

I

On May 11, 1988, at about 11:45 p.m., William Robinson encountered defendant on the street. William believed that defendant owed him money for ruining a pair of his pants and for breaking his radio. William testified that he told defendant "that I wanted my money and if he [didn't] give me my money then I[ ] [was] going to hurt him." William left to get something to eat, but met defendant again a short time later and repeated his demand to be paid. Defendant paid him $120 and promised to pay the rest the following day. William responded that he wanted full payment immediately, whereupon the two began to argue. William, a boxer, punched defendant once extremely hard on the nose and mouth, and defendant "buckled" and "staggered back." William prepared to hit defendant again but decided not to do so because he feared defendant would "drop[ ] to the concrete" and sustain

severe injury. Instead, William told defendant to repay the debt soon or William would have to "really" hurt him. William then turned and walked away.

At a distance of only two or three feet from where he left defendant, William heard a gunshot and felt a bullet graze his leg and go through one of his fingers. William then began to run in a "zig-zag" manner. He heard four more shots, three of which hit him in the buttocks, arm, and back, narrowly missing his spinal cord. William ran home and was taken to the hospital, where he was treated for serious injuries, including partial loss of movement in one finger.

While in the hospital, William told a police officer that he had seen defendant shoot him. William also testified before the grand jury that defendant had been his assailant. At the trial, however, William testified that he had never actually seen his assailant, and that the shooter could have been either defendant or "Red," an acquaintance of defendant who was present at the scene.

At trial, defendant relied on a mistaken-identity defense. The jury, however, convicted defendant of attempted murder, second-degree aggravated assault, and two weapons-possession charges. The court merged the weapons offenses with the attempted-murder conviction, for which defendant was sentenced to fifteen years with a five-year parole-ineligibility period. Defendant also received a concurrent seven-year sentence for the assault, with three years of parole ineligibility.

On appeal, defendant argued that the court on its own initiative should have instructed the jury on attempted passion/provocation manslaughter, although no such charge had been requested. Defendant argued that had he actually killed his uncle, he would have been entitled to a jury instruction on passion/provocation manslaughter as a lesser-included offense of murder. Similarly, defendant reasoned, the jury should have received an instruction on attempted passion/provocation manslaughter as a lesser-included offense of attempted murder.

The State argued that an analysis of the Code shows that the Legislature did not intend to apply the criminal "attempt" statute, *N.J.S.A.* 2C:5–1, to passion/provocation manslaughter. The State claimed that passion/provocation manslaughter is not an independent offense but rather is a category of homicide committed under circumstances that mitigate the crime of murder. Thus, the State asserted, passion/provocation manslaughter is relevant only in the context of a homicide that would otherwise be murder, and is not relevant to attempted murder. The State contended that even if such a crime were recognized, the court would not have been required to charge the jury *sua sponte* on attempted passion/provocation manslaughter.

The Appellate Division held that attempted passion/provocation manslaughter is a crime. 266 *N.J.Super.* at 278, 629 *A.*2d 103. The court observed that if attempted passion/provocation manslaughter were not recognized as a crime under the Code, a defendant attempting a homicide under circumstances entitling him to a charge of passion/provocation manslaughter could benefit if his victim died, because passion/provocation manslaughter, a second-degree crime, carries a lesser penalty than attempted murder, a first-degree crime. *Id.* at 277, 629 *A.*2d 103. Nevertheless, the Appellate Division affirmed defendant's convictions. Relying on *State v. Mauricio,* 117 *N.J.* 402, 568 *A.*2d 879 (1990), the court found that the evidence was insufficient to require the trial court to charge *sua sponte* attempted passion/provocation manslaughter as a lesser-included offense of attempted murder. 266 *N.J.Super.* at 279–81, 629 *A.*2d 103.

## II

### A

Passion/provocation manslaughter is an intentional homicide committed under extenuating circumstances that mitigate the murder. 2 Wayne R. LaFave & Austin W. Scott, Jr., *Substantive Criminal Law* § 7.10, at 252 (1986). The common law of pas-

sion/provocation manslaughter originated in England, where the impassioned killer was treated more leniently than the calm killer because of the harshness of the then-mandatory death penalty for all cases of homicide. Joshua Dressler, *Rethinking Heat of Passion: A Defense in Search of a Rationale*, 73 *J.Crim.L. & Criminology* 421, 422–23 (1982). Although murder no longer carries a mandatory death penalty, passion/provocation manslaughter has remained a part of our criminal law as " ' "a concession to the frailty of man, a recognition that the average person can understandably react violently to a sufficient wrong and hence some lesser punishment is appropriate." ' " *Mauricio, supra*, 117 *N.J.* at 410, 568 *A.*2d 879 (quoting *State v. Crisantos*, 102 *N.J.* 265, 274, 508 *A.*2d 167 (1986) (quoting *State v. Guido*, 40 *N.J.* 191, 209–10, 191 *A.*2d 45 (1963))).

■ *N.J.S.A.* 2C:11–4b(2) codified the common-law definition of passion/provocation manslaughter. *Crisantos, supra*, 102 *N.J.* at 271 n. 7, 508 *A.*2d 167. That statute defines passion/provocation manslaughter as "[a] homicide that would otherwise be murder under section 2C:11–3 [except that it] is committed in the heat of passion resulting from a reasonable provocation." Thus, passion/provocation manslaughter is considered a lesser-included offense of murder: the offense contains all the elements of murder except that the presence of reasonable provocation, coupled with defendant's impassioned actions, establish a lesser culpability. *See N.J.S.A.* 2C:1–8d(3).

The grading of passion/provocation manslaughter reflects a general understanding that one who kills "in the heat of passion resulting from a reasonable provocation" is less culpable than one who is not so affected. Passion/provocation manslaughter is a second-degree crime. *N.J.S.A.* 2C:11–4c.

## B

■ " '[T]he law of attempt exists because there is just as much need to stop, deter and reform a person who has unsuccessfully attempted * * * to commit a crime [as] one who has already committed such an offense.' " 2 LaFave & Scott, *supra*, § 6.2, at

22 (quoting Donald Stuart, *The Actus Reus in Attempts*, 1970 *Crim.L.Rev.* 505, 511). Our criminal attempt statute has also been described as serving the following functions: 1) to punish an actor's disposition to commit a crime either on a specific occasion or in the future; and 2) to punish an actor whose failure to complete a crime occurs due to a fortuity, such as when a bullet misses its mark. 2 *The New Jersey Penal Code: Final Report of the New Jersey Criminal Law Revision Commission* introductory note to ch. 5, at 112 (1971) (hereinafter *Final Report*) (quoting *Model Penal Code*, art. 5 commentary at 24–25 (Tentative Draft No. 10, 1960)) (hereinafter *Tentative Draft No. 10*); *see also* 2 LaFave & Scott, *supra*, § 6.2, at 22–23 (listing objectives of criminal law served by crime of attempt). Therefore, one of the main purposes of the Code's criminal attempt statute, *N.J.S.A.* 2C:5–1, is to ensure that a person who acts with the purpose of committing a crime does not escape punishment merely because the crime was not completed. The criminalization of attempt focuses on the intent of the actor to cause a criminal result, 2 *Final Report, supra*, § 2C:5–1 commentary at 113, rather than on the resulting harm.

That focus has influenced the grading of attempt crimes. Generally, the penalties associated with attempt crimes correspond to the penalties associated with the crimes that are attempted. *N.J.S.A.* 2C:5–4a. Thus, an attempt to commit a second-degree crime is punishable as a second-degree crime. An exception to that general rule is that attempted first-degree crimes are graded as second-degree crimes. *Ibid.* However, attempted murder is excluded from that exception. *N.J.S.A.* 2C:5–4a was amended in 1986 to grade attempted murder as a first-degree crime:

> An attempt * * * to commit a crime of the first degree is a crime of the second degree; except that an attempt to commit murder is a crime of the 1st degree. Otherwise an attempt is a crime of the same degree as the most serious crime which is attempted * * *.
>
> *[N.J.S.A.* 2C:5–4a.]

Our criminal attempt statute generally serves to punish one who acts with the level of culpability required to commit a

crime regardless of whether the intended result occurs. In defining an attempt to commit a crime under circumstances in which a specific result is an element of the crime, the Code provides:

> a. * * * A person is guilty of an attempt to commit a crime if, *acting with the kind of culpability otherwise required for commission of the crime,* he:
>
> * * * * * * * *
>
> (2) When causing a particular result is an element of the crime, does or omits to do anything with the *purpose* of causing such result without further conduct on his part * * *.
>
> [*N.J.S.A.* 2C:5–1 (emphasis added).]

Thus, a person charged with attempted murder must be found to have acted with the culpability required for the crime of murder, as well as to have acted with the purpose of causing the result that is an element of murder, namely, the death of another.

### III

New Jersey's criminal attempt statute, *N.J.S.A.* 2C:5–1, does not list the different "attempt" crimes that are cognizable under the Code. Rather, *N.J.S.A.* 2C:5–1 makes criminal *all attempts to commit other crimes* defined in the Code, when certain circumstances are present. The statute is modeled after section 5.01 of the Model Penal Code ("MPC"). Prior to the adoption of the Code, the New Jersey criminal statutes contained no definition of criminal attempt. The courts followed principles of "attempt" liability developed at common law. 2 *Final Report, supra,* § 2C:5–1 commentary at 113. At the time of the drafting of the MPC, other states also relied on case law to define criminal attempt. *Tentative Draft No. 10, supra,* § 5.01 commentary at 27. As a result, the drafters of the MPC attempted to define with greater specificity the elements of that crime. One such element was the requirement that the defendant have acted with the purpose of committing the crime. Tentative Draft No. 10 notes that section 5.01 "follows the conventional pattern of limiting this inchoate crime to purposive conduct. In the language of the

courts, there must be 'intent in fact' or 'specific intent' to commit the crime allegedly attempted." *Ibid.*

Prior to the adoption of the Code, New Jersey courts had required an "inten[t] to commit the crime itself" as an element of attempt. *State v. Weleck,* 10 *N.J.* 355, 373, 91 *A.*2d 751 (1952). By adopting the MPC language, the Code continued the requirement that when a particular result is an element of the attempted crime, the defendant must purposefully intend that result. *N.J.S.A.* 2C:5–1a(2); *see also Final Report, supra,* § 2C:5–1 commentary at 114. Hence, the structure of the criminal attempt provisions of the Code demonstrate a legislative intention to apply the attempt statute to *any* crime recognized by the Code that requires purposeful conduct for its commission. Accordingly, without listing the crimes that are subject to its attempt provisions, the Code defines that category of crimes based on whether the crime that is attempted requires a purposeful state of mind.

This Court applied the requirement that an attempt crime involve purposeful conduct most recently in *State v. Rhett,* 127 *N.J.* 3, 601 *A.*2d 689 (1992). In *Rhett,* we reversed an attempted murder conviction because it was based on an erroneous charge to the jury regarding the *mens rea* required for conviction. The trial court had instructed the jury that "a person 'acting purposely or acting knowingly' who 'purposely engaged in the conduct which would constitute the crime' is guilty of an attempt." *Id.* at 7, 601 *A.*2d 689. This Court held that such an instruction would allow a jury to find guilty of attempted murder a defendant who had acted "knowingly" rather than "purposely," see *N.J.S.A.* 2C:2–2b(1) and (2), and that that instruction was in "conflict[ ] with the statutory definition of 'attempt.'" *Ibid.*

The Court's holding in *Rhett* was also based on a commonsense understanding of the *mens rea* required for an attempt. *Ibid.* As we stated in *State v. McCoy,* 116 *N.J.* 293, 561 *A.*2d 582 (1989), "'one cannot logically attempt to cause a particular result unless causing that result is one's "conscious object," the distinguishing feature of a purposeful mental state.'" *Id.* at 304, 561 *A.*2d 582

(quoting *State v. McAllister*, 211 *N.J.Super.* 355, 362, 511 *A.*2d 1216 (App.Div.1986) (quoting *N.J.S.A.* 2C:2–2b(1))). Therefore, because "[a]n actor cannot intend an unintended result * * *, an actor cannot attempt to cause death unless death is a conscious object of the actor's conduct." *Rhett, supra,* 127 *N.J.* at 7, 601 *A.*2d 689. See also *State v. Darby,* 200 *N.J.Super.* 327, 331, 491 *A.*2d 733 (App.Div.1984) (stating that "attempted felony murder" is not crime because felony murder does not require purpose to cause death, and one cannot intend unintended result), *certif. denied,* 101 *N.J.* 226, 501 *A.*2d 905 (1985).

Passion/provocation manslaughter, however, is an intentional crime. Unlike other lesser-included offenses of murder, such as aggravated manslaughter and reckless manslaughter, a finding of guilt of passion/provocation manslaughter does not suggest that a defendant did not intend to kill. Rather, a conviction of the lesser-included offense of passion/provocation manslaughter indicates that the defendant, while acting with an intent to kill, did not act with the level of culpability necessary for a murder conviction, due to circumstances present at the time of the killing. Therefore, because passion/provocation manslaughter is an intentional crime and the attempt statute applies to all intentional crimes, the Code impels us to recognize the crime of attempted passion/provocation manslaughter.

The quality of intent required for a passion/provocation-manslaughter conviction has proven to be the determining factor for other states as well in deciding whether to recognize the crime of attempted passion/provocation manslaughter, or attempted voluntary manslaughter as some states call it. *See, e.g., Cox v. State,* 311 *Md.* 326, 534 *A.*2d 1333 (1988) (holding that attempted voluntary manslaughter is crime under common law of Maryland and noting that majority of states that have affirmed convictions for attempted voluntary manslaughter have analyzed issue with regard to requirement of intent); *see also* Joshua Sachs, *Is Attempt to Commit Voluntary Manslaughter a Possible Crime?,* 71 *Ill.B.J.* 166, 166–70 (Nov. 1982) (summarizing various states' positions on

attempted voluntary manslaughter and arguing that State of Illinois should adopt definition of voluntary manslaughter that includes intent to kill, leading to recognition of crime of attempted voluntary manslaughter). Those states that do not require intent to kill as an element of passion/provocation manslaughter have not recognized attempted passion/provocation manslaughter. See, *e.g., Curry v. State,* 106 *Nev.* 317, 792 *P.*2d 396, 397 (1990) (holding that general intent crime of voluntary manslaughter is incompatible with specific intent required for criminal attempt, and stating that "attempted voluntary manslaughter is therefore an illogical illusion"). However, those states that define passion/provocation manslaughter as an intentional crime generally have found attempted passion/provocation manslaughter or attempted voluntary manslaughter to be a cognizable crime under their criminal laws. See, *e.g., People v. Tucciarone,* 137 *Cal.App.*3d 701, 187 *Cal.Rptr.* 159, 162 (Ct.App.1982) (holding that voluntary manslaughter is intentional crime and thus supports crime of attempted voluntary manslaughter); *Ex parte Buggs,* 644 *S.W.*2d 748, 750 (Tex.Crim. App.1983) (holding that attempted voluntary manslaughter constitutes penal offense when intent to commit substantive offense of murder is mitigated by evidence that accused acted under immediate influence of passion arising from adequate cause); *State v. Norman,* 580 *P.*2d 237, 240 (Utah 1978) (finding that attempt to commit manslaughter is included offense of attempted murder if defendant acted with intent to kill); *cf. Commonwealth v. Hebert,* 373 *Mass.* 535, 368 *N.E.*2d 1204, 1206 (1977) (noting that attempted voluntary manslaughter is cognizable crime but that crime of assault with intent to kill adequately encompassed that offense); *People v. Rodriguez,* 258 *Ill.App.*3d 579, 197 *Ill.Dec.* 424, 429–30, 631 *N.E.*2d 427, 432–33 (1994) (noting that appellate courts are divided on whether attempted voluntary manslaughter is cognizable crime under revised Illinois statute). Thus, our analysis and conclusion comports with determinations made by other states as well.

Our conclusion that the Code contemplates the crime of attempted passion/provocation manslaughter is also consistent with

our belief that recognition of that crime would further the purposes underlying both the law of passion/provocation manslaughter and the law of attempt. Passion/provocation manslaughter exists to mitigate the penalties associated with the offense of murder when an actor intentionally kills another but does not possess the quality of culpability necessary for a murder conviction. On the other hand, the law of attempt serves to ensure that one who acts with a specified level of culpability and the required criminal purpose is punished for that behavior, regardless of whether the criminal result is achieved. When a defendant is convicted of attempted passion/provocation manslaughter, that defendant's level of culpability will have been established as less than that required for a conviction of attempted murder. Moreover, that defendant will receive punishment for acting with the level of culpability necessary for a conviction of passion/provocation manslaughter, even though the intended result was not achieved. Thus, the purposes underlying the crimes of passion/provocation manslaughter and criminal attempt will have been given effect.

Furthermore, as the Appellate Division observed, a failure to recognize attempted passion/provocation manslaughter yields anomalous sentencing results that are contrary to the sentencing goals of the Code. 266 *N.J.Super.* at 278, 629 *A.*2d 103. If attempted passion/provocation manslaughter were not recognized as an offense under the Code, a defendant found to have killed in the heat of passion based on reasonable provocation would be guilty of a second-degree offense, while a defendant who in the heat of passion attempted but failed to kill the victim would be guilty of a first-degree offense. To promote an interpretation of the Code that would punish an unsuccessful defendant more harshly than one who actually achieved the level of harm intended would be unacceptable. See *Final Report, supra,* § 2C:5–4 commentary at 148 (quoting *Tentative Draft No. 10,* at 178–79) (noting that "the inchoate crime should not be graded higher than the substantive offense; it is the danger that the actor's conduct may culminate in its commission that justifies creating the inchoate

crime"). In recognizing the crime of attempted passion/provocation manslaughter we eliminate that sentencing anomaly.

▮ In sum, we find nothing in the Code that would suggest that the Legislature intended to foreclose the possibility of convicting a defendant for attempted passion/provocation manslaughter. Rather, the language of our criminal attempt statute indicates that it applies to all crimes found in the Code that require purposeful conduct. Because passion/provocation is an intentional crime, the attempt statute applies. We also find that the crime of attempted passion/provocation manslaughter furthers the purposes underlying our criminal attempt and passion/provocation statutes. Therefore, we hold that attempted passion/provocation manslaughter is cognizable under the Code as a lesser-included offense of attempted murder.

## IV

▮ This appeal also presents the issue of when a court should submit the lesser-included offense of attempted passion/provocation manslaughter to a jury in the absence of a request from counsel.

For guidance, we look to the standard that we have established for trial courts with regard to their duty to charge a jury *sua sponte* on passion/provocation manslaughter. In *State v. Choice*, 98 *N.J.* 295, 299, 486 *A.*2d 833 (1985), we noted that a trial court "does not * * * have the obligation on its own meticulously to sift through the entire record in every murder trial to see if some combination of facts and inferences might rationally sustain a manslaughter charge." Rather, we held that "[i]t is only when the facts 'clearly indicate' the appropriateness of that charge that the duty of the trial court arises." *Ibid.* (quoting *State v. Powell*, 84 *N.J.* 305, 318, 419 *A.*2d 406 (1980)).

In addition, we also recognized that a trial court's decision to give a charge *sua sponte* on passion/provocation manslaughter requires a balancing of various interests that arise due to "[t]he

possible complexities at the trial level in a criminal matter that may arise from a charge not requested by any of the parties * * *." *Id.* at 301, 486 *A.*2d 833. For example, a manslaughter charge given by the court on its own initiative could surprise the prosecution or the defense, and require the court to grant an opportunity to both sides to present further evidence. *Id.* at 300, 486 *A.*2d 833. Such a charge might also generate the production of evidence that would make a conviction of murder more likely. *Ibid.* On the other hand, we have recognized that a lesser-included offense need not be consistent with the theory offered by the defendant for it to be charged. *Powell, supra,* 84 *N.J.* at 317, 419 *A.*2d 406. We have also underscored that the public interest in presenting such a charge to the jury "may go well beyond the interests of the parties." *Choice, supra,* 98 *N.J.* at 301, 486 *A.*2d 833.

In *Mauricio, supra,* the Court addressed the issue of when a trial court should, at defense counsel's request, submit the issue of passion/provocation to a jury. The Court adopted a four part test for passion/provocation manslaughter:

> Passion/provocation manslaughter has four elements: the provocation must be adequate, the defendant must not have had time to cool off between the provocation and the slaying; the provocation must have actually impassioned the defendant; and the defendant must not have actually cooled off before the slaying.

[117 *N.J.* at 411, 568 *A.*2d 879.]

The first two elements constitute the objective standard required by the Legislature. The third and fourth elements are more subjective because they relate to the defendant's actual response. *Ibid.* The Court in *Mauricio* determined that once the trial court has found that the first two requirements are satisfied, the last two subjective elements "should almost always be left to the jury." *Id.* at 413, 568 *A.*2d 879. The *Mauricio* Court also noted that when a defendant

> requests a charge on passion/provocation manslaughter as a lesser-included offense of murder, the trial court should instruct the jury on that form of manslaughter if an examination of the record discloses that the evidence satisfies the rational-basis

standard—that is, that " 'it would not be *idle* to have the jury decide' whether the defendant had committed the lesser-included offense."

[*Id.* at 417–18, 568 *A.2d* 879 (quoting *Crisantos, supra,* 102 *N.J.* at 278, 508 *A.2d* 167 (quoting *State v. Sinclair,* 49 *N.J.* 525, 540, 231 *A.2d* 565 (1967))).]

However, in determining whether to submit a passion/provocation charge to a jury on its own initiative, we held in *Choice, supra,* that a court must find that evidence " 'clearly indicate[s]' " the appropriateness of such a charge. 98 *N.J.* at 299, 486 *A.2d* 833 (quoting *Powell, supra,* 84 *N.J.* at 318, 419 *A.2d* 406). Therefore, applying the standard announced in *Choice* to the procedure established by *Mauricio,* we hold that a trial court in charging a jury *sua sponte* must find first that the two objective elements of passion/provocation manslaughter are *clearly indicated* by the evidence. If they are, the two subjective elements should "almost always be left for the jury." That standard is equally applicable to a trial court's decision to charge a jury *sua sponte* on attempted passion/provocation manslaughter.

The Appellate Division found that the two objective elements of the test were clearly indicated by the evidence. 266 *N.J.Super.* at 279–80, 629 *A.2d* 103. However, due to a lack of evidence or argument on the passion/provocation issue, the court found that the two subjective elements—whether defendant had actually been impassioned by the provocation and whether defendant had not cooled off before the slaying—were not clearly indicated. *Id.* at 280, 629 *A.2d* 103. The Appellate Division applied an incorrect standard: once it determined that the first two elements were clearly indicated by the evidence, the court should have found that the evidence was adequate to raise a jury issue relating to the subjective elements.

The Appellate Division correctly determined that the facts "clearly indicate" that the first two requirements of the *Mauricio* test had been met. The first requirement is that the provocation be adequate. The "provocation must be ' "sufficient to arouse the passions of an ordinary [person] beyond the power of his [or her] control." ' " *Mauricio, supra,* 117 *N.J.* at 412, 568 *A.2d* 879 (alterations in original) (quoting *State v. King,* 37 *N.J.* 285, 301–02, 181 *A.2d* 158 (1962) (quoting *State v. Herrmann,* 77 *N.J.L.* 534,

535, 76 *A.* 1086 (E. & A.1909))). In *Mauricio,* the Court noted that "battery, except for a light blow, has traditionally been considered, almost as a matter of law, to be sufficiently provocative." *Id.* at 414, 568 *A.*2d 879; *see also* 2 Charles E. Torcia, *Wharton's Criminal Law* § 158, at 252 ("Assault or battery may constitute adequate provocation to reduce the killing to voluntary manslaughter.") Thus, in view of William's admittedly powerful blow to defendant's face, we agree that the facts clearly indicate the objective adequacy of the provocation.

The second objective requirement is that defendant must not have had time to cool down between the provocation and the retaliation. Although the *Mauricio* Court noted that passion/provocation manslaughter is not available if a reasonable person should have cooled off before the killing, it also recognized that "it is well-nigh impossible to set specific guidelines in temporal terms." *Id.* at 413, 568 *A.*2d 879. Thus, in *Mauricio,* the Court found that a half hour was not, as a matter of law, a sufficiently long period of time such that "no jury could rationally determine that a reasonable person's inflamed passions might not have cooled sufficiently to permit the return of self-control." *Id.* at 415, 568 *A.*2d 879. Because William was shot almost immediately after punching defendant, we must also agree that the evidence clearly indicated that a reasonable person might not have had time to cool down between the provocation and the retaliation. Moreover, the circumstances of the shooting, which occurred almost immediately after William struck defendant, strongly suggest that defendant was actually impassioned and had not cooled down. We also note that the trial court itself noted at sentencing the presence of passion/provocation as a mitigating factor. As a result, we find that the evidence was indeed sufficient to mandate a *sua sponte* charge to the jury on attempted passion/provocation manslaughter.

V

To sum up, the Legislature's grading of attempted murder under the Code as a first degree crime warrants the conclusion

that it would intend that the uncompleted offense be mitigated, as would be the completed offense, by the presence of passion/provocation. This is an unfamiliar crime but not a new crime. In the words of *N.J.S.A.* 2C:11–4b(2), the accused has attempted a homicide that but for the presence of passion/provocation would be murder. The Code describes as manslaughter the crime that was attempted.

We think this crime will remain unfamiliar, because there are few instances in which a defendant charged with attempted homicide will want to raise before a jury the argument that he or she actually intended to kill. We are considering a revision of our Rules of Criminal Procedure to require charging conferences to be put on the record. *Report of the Supreme Court Committee on Criminal Practice: 1992–1994 Term*, at 51–53. At the charging conference, the court should thoroughly explore potential charging problems such as the appropriateness of charging attempted passion/provocation manslaughter. In a case such as this, in which the defendant denied that he was the perpetrator, the defendant should be required before the court charges the jury to make the strategic decision about how the case should be presented to the jury. Plain error problems in charging should not arise.

## VI

We reverse defendant's attempted-murder conviction and remand the matter to the Law Division for further proceedings consistent with this opinion.

FOR REVERSAL AND REMANDMENT—Justices CLIFFORD, HANDLER, POLLOCK, O'HERN, GARIBALDI and STEIN—6.

OPPOSED—None.