**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3639-22

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

ANDRE A. MURRILL,

    Defendant-Appellant.

_____

Submitted January 27, 2025 – Decided June 2, 2025

Before Judges Sabatino, Jacobs and Jablonski.

On appeal from the Superior Court of New Jersey, Law Division, Essex County, Indictment No. 21-04-0502.

Jennifer N. Sellitti, Public Defender, attorney for appellant (Alison Gifford, Assistant Deputy Public Defender, of counsel and on the briefs).

Theodore N. Stephens II, Essex County Prosecutor, attorney for respondent (Lucille M. Rosano, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Following a trial by jury, defendant Andre Murrill appeals his conviction and sentence for assault and weapons-related offenses. For reasons that follow, we affirm defendant's conviction and sentence.

I.

In early 2020, following a thirteen-year romantic relationship from which three children were born, defendant and Joyce Jones ("Joyce")[1] parted ways. Defendant vacated their Newark home but maintained contact with Joyce, continuing to co-parent. Joyce continued to reside with their three children.

In September 2020, defendant entered Joyce's residence to visit the children. According to Joyce's testimony at a N.J.R.E. 404(b) hearing, defendant implored her to resume their romantic relationship. She refused. This enraged defendant and led him to assert that if she were to find another romantic partner, she would not enjoy the two large-screen televisions that he had purchased for the residence. With that, defendant smashed both televisions. In testimony elicited during the same 404(b) hearing, defendant claimed their dispute arose over purportedly disrespectful comments Joyce made about his deceased mother. No matter the cause, there is no dispute that defendant

---

[1] We use pseudonyms to reference the non-defendant parties in this domestic violence-related case to protect their identities. R. 1:38-3(c)(12).

smashed the televisions before leaving the premises.

After defendant left, Joyce called the police. When the police arrived, defendant allegedly called and threatened to kill Joyce while she placed the phone on "speaker" in the presence of the responding officers. Joyce testified the call and threat were captured on the officers' body-worn cameras but were not preserved. None of the responding officers testified at the subsequent 404(b) hearing,[2] nor were they called to testify at trial. Defendant denied making any threats. Following this incident, there is again no dispute that defendant replaced the televisions, and the parties resumed their co-parenting relationship.

The parties' three children spent the first full weekend of November 2020 visiting with defendant. After defendant returned them to Joyce's home on Sunday, November 8, she realized one child's asthma medication was missing and telephoned defendant to return it. Defendant insisted that Joyce travel to his apartment to retrieve the medication. Concerned for her safety, Joyce went to defendant's home with her daughter from another relationship, Annie, and a cousin. While there, defendant proposed that he be given primary responsibility to raise the children. When Joyce refused, an argument ensued and escalated to the point where defendant allegedly lunged at Joyce, stabbing her with a knife

_____

[2] We discuss the hearing in detail, <u>infra</u> at ____ (Slip op. at 16).

in her face, head, and neck. The attack escalated further, with defendant shooting Joyce in the arm and Annie in the chest and hand. Defendant left the apartment and drove away in his car. Video footage in evidence shows defendant's car jump a sidewalk curb and strike Joyce, a tree, and then drive out of view where it ceased to operate.

Defendant was arrested, and in April 2021 an Essex County grand jury returned an indictment charging defendant with two counts of attempted murder ("by shooting her with a handgun" and "striking her with his car"), N.J.S.A. 2C:5-1(a)(1) and 2C:11-3(a)(1), two counts of second-degree aggravated assault, N.J.S.A. 2C:12-1(b)(1), one count of second-degree unlawful possession of a handgun, N.J.S.A. 2C:39-5(b), two counts of second-degree possession of a handgun for an unlawful purpose, N.J.S.A. 2C:39-4(a), two counts of fourth-degree unlawful possession of a weapon, N.J.S.A. 2C:39-5(d), and two counts of third-degree possession of a weapon for an unlawful purpose, N.J.S.A. 2C:39-4(d).

404(b) Hearing

Before trial, the State brought a N.J.R.E. 404(b) application, seeking to admit in evidence the September 2020 incident to prove defendant's intent, motive, and state of mind. The court heard testimony from defendant, Joyce,

Annie, and Joyce's cousin about the events from September 2020. The trial court engaged in the familiar four-prong analysis outlined in State v. Cofield, 127 N.J. 328, 338 (1992) to determine if the evidence at issue was: (1) relevant to a material issue; (2) similar in kind and reasonably close in time to the offense charged; (3) clear and convincing; and (4) whether its probative value was not outweighed by its apparent prejudice. Regarding prong one, the court determined the threats made by defendant in September 2020 were relevant "to the State meeting its burden of showing the defendant had the requisite state of mind to attempt to murder [Joyce] on November 8th of 2020." The court also determined that the incident was relevant to prove defendant's "jealousy" motive. The September incident was determined to be "sufficiently close in time and similar in kind" to satisfy prong two. Finding Joyce's testimony credible, the court found prong three satisfied by clear and convincing evidence. Concerning prong four, the court found the September incident "highly probative and necessary to illustrate [defendant's] intent and motive and the state of mind," outweighing any apparent prejudice.

The Trial

A jury trial was conducted on various dates in October and November 2022. Joyce testified consistent with her testimony at the 404(b) hearing.

A-3639-22

At trial, defendant testified he unintentionally wounded Joyce after she attacked him with a knife, noting that he too suffered knife wounds in the struggle. In similar fashion, defendant claimed that Annie had entered his home with a gun. In attempting to remove it, defendant claimed he held Annie's arm in effort to wrest the gun from her hand when the gun fired involuntarily, striking Joyce once and Annie twice. Defendant testified that he left his apartment with the intention to escape further harm to himself, but not to harm Joyce or Annie in any way. When he reached his parked car, however, it was wedged between two other cars. Turning his steering wheel in an effort to extract his car, he hit the car parked in front. With that, the steering wheel jammed, and according to defendant, his car jumped the curb, colliding with Joyce and then hitting a tree. The car then rolled down to the middle of the street and ceased to operate. Defendant ran out of the car, heard the police and panicked, hiding under his car. The police found and arrested him.

In its final charge, the court issued a model 404(b) instruction concerning the September 2022 incident. See Model Jury Charges (Criminal), "Proof of Other Crimes, Wrongs, or Acts (N.J.R.E. 404(b)" (rev. Sept. 12, 2016)). The trial court also instructed the jury on the underlying charges in accordance with the model jury charges. At defense counsel's request, the court instructed the

6

jury on the "impossibility" defense as applied to the attempted murder charges.

On November 4, 2022, the jury acquitted defendant of all charges related to assault with a gun and knife against Annie and Joyce. Defendant was found guilty of the charges related to driving a car and hitting Joyce; namely, first-degree attempted murder, third-degree attempted aggravated assault (as amended from second-degree aggravated assault at trial), third-degree possession of a weapon (car) with an unlawful purpose, and fourth-degree possession of a weapon for unlawful purpose.

On May 15, 2023, defendant was sentenced to an aggregate term of ten years with an 85% parole disqualifier pursuant to the No Early Release Act ("NERA"), N.J.S.A. 2C:43-7.2. In imposing this sentence, the court evaluated the aggravating and mitigating factors. N.J.S.A. 2C:44-1. It found a single aggravating factor, number nine, the need for deterrence. N.J.S.A. 2C:44-1(a)(9). That finding was based on what the court termed defendant's "series of acts to attempt to murder the victim in this case." The court also found mitigating factors seven (no history of prior delinquency or criminal activity), eight (circumstances unlikely to reoccur), and nine (character and attitude of the defendant indicate that the defendant is unlikely to commit another offense). N.J.S.A. 2C:44-1(b)(7) to (9). The court merged counts ten (aggravated assault),

7

eleven (unlawful possession of a weapon), and twelve (possession for unlawful purpose) with count nine (attempted murder), and sentenced defendant to ten years with 85% parole ineligibility pursuant to NERA, the very bottom of the sentencing range.

On appeal, defendant raises the following arguments:

POINT I

REVERSAL IS REQUIRED BECAUSE THE TRIAL COURT FAILED TO INSTRUCT THE JURY ON ATTEMPTED PASSION/PROVOCATION MANSLAUGHTER AS A LESSER-INCLUDED OFFENSE OF ATTEMPTED MURDER, AND ON ASSAULT BY AUTOMOBILE AS A LESSER-INCLUDED OFFENSE OF AGGRAVATED ASSAULT. (Not Raised Below)

    A.    The trial court erred in failing to instruct the jury on attempted passion/provocation manslaughter when the evidence clearly indicated that Murrill could have hit [Joyce] with his car in response to adequate provocation.

    B.    The trial court erred in failing to instruct the jury on assault by automobile when the evidence clearly raised the issue of whether Murrill acted recklessly in hitting [Joyce] with his car.

POINT II

THE ERRONEOUS INSTRUCTION ON ATTEMPT REQUIRES REVERSAL OF DEFENDANT'S ATTEMPTED MURDER CONVICTION. (Not Raised Below)

8

THE TRIAL COURT ERRONEOUSLY RULED THAT THE SEPTEMBER 21, 2020 ALTERCATION WAS ADMISSIBLE AGAINST DEFENDANT IN THE STATE'S CASE-IN-CHIEF BECAUSE IT WAS EXTREMELY PREJUDICIAL AND SERVED ONLY TO SUGGEST THAT DEFENDANT WAS TEMPERAMENTAL AND VIOLENT.

POINT IV

THE JUDGMENT OF CONVICTION MUST BE AMENDED TO REFLECT THAT DEFENDANT WAS CONVICTED OF THIRD-DEGREE AGGRAVATED ASSAULT, NOT SECOND DEGREE AGGRAVATED ASSAULT.

II.

Lesser-Included Offenses

Defendant argues the trial court committed reversible error in failing to sua sponte instruct the jury on attempted passion/provocation manslaughter as a lesser-included offense of attempted murder or fourth-degree assault by auto as a lesser-included offense of third-degree aggravated assault. Defendant maintains that simultaneous attacks by knife and gun constituted adequate provocation from which he did not have adequate time to cool off, justifying a passion/provocation option.

Where, as here, defendant "did not request a charge or did not object to the omission of a charge to a lesser[-]included offense," we assess "whether the record 'clearly indicated' the charge, such that the trial court was obligated to give it sua sponte." State v. Dunbrack, 245 N.J. 532, 545 (2021) (quoting State v. Denofa, 187 N.J. 24, 41-42 (2006)). In other words, an unrequested charge on a lesser-included offense "must be given only where the facts in evidence 'clearly indicate' the appropriateness of the charge." State v. Savage, 172 N.J. 374, 397 (2002) (quoting State v. Choice, 98 N.J. 295, 298 (1985)). "[W]hen the defendant fails to ask for a charge on lesser-included offenses, the court is not obliged to sift meticulously through the record in search of any combination of facts supporting a lesser-included charge." Denofa, 187 N.J. at 42.

Nonetheless, a trial judge has an independent, non-delegable duty "to instruct on lesser-included charges when the facts adduced at trial clearly indicate that a jury could convict on the lesser while acquitting on the greater offense." State v. Funderburg, 225 N.J. 66, 76 (2016) (quoting State v. Jenkins, 178 N.J. 347, 351 (2004)). Thus, even if neither the State nor defendant requests the trial judge to instruct the jury on a lesser-included offense, the court must sua sponte provide such an instruction when appropriate. State v. Maloney, 216 N.J. 91, 107 (2013) (quoting State v. Thomas, 187 N.J. 119, 132 (2006)).

Ultimately, "the need for the charge must 'jump off' the proverbial page." State v. R.T., 205 N.J. 493, 510 (2011) (Long, J., concurring) (citing Denofa, 187 N.J. at 42).

"Passion/provocation manslaughter is an intentional homicide committed under extenuating circumstances that mitigate the murder." State v. Robinson, 136 N.J. 476, 481 (1994). A homicide may be considered manslaughter when "[a] homicide which would otherwise be murder under section 2C:11-3 is committed in the heat of passion resulting from a reasonable provocation." N.J.S.A. 2C:11-4(b)(2). "Thus, passion/provocation manslaughter is considered a lesser-included offense of murder: the offense contains all the elements of murder except that the presence of reasonable provocation, coupled with defendant's impassioned actions, establish a lesser culpability." Robinson, 136 N.J. at 482; see also N.J.S.A. 2C:1-8(d)(3).

> In our jurisprudence, attempted passion/provocation manslaughter is comprised of four elements: (1) the provocation must be adequate; (2) the defendant must not have had time to cool off between the provocation and the slaying; (3) the provocation must have actually impassioned the defendant; and (4) the defendant must not have actually cooled off before the slaying.
>
> [Funderburg, 225 N.J. at 80 (citing State v. Mauricio, 117 N.J. 402, 411 (1990)).]

The first two criteria are objective, and the second two are subjective. Mauricio, 117 N.J. at 411.

"In determining whether to instruct a jury on passion/provocation manslaughter, the trial judge must view the evidence in the light most favorable to defendant." State v. Viera, 346 N.J. Super. 198, 212 (App. Div. 2001). As the Supreme Court explained,

> A trial court in charging a jury sua sponte must find first that the two objective elements of passion/provocation manslaughter are clearly indicated by the evidence. If they are, the two subjective elements should "almost always be left for the jury." That standard is equally applicable to a trial court's decision to charge a jury sua sponte on attempted passion/provocation manslaughter.
>
> [Robinson, 136 N.J. at 491.]

The two objective elements are whether the provocation was adequate and whether there was time for the defendant to cool off before the slaying. Mauricio, 117 N.J. at 411. The measure of adequate provocation is whether "loss of self-control is a reasonable reaction." Id. at 412. "The provocation must be sufficient to arouse the passions of an ordinary [person] beyond the power of his [or her] control." Robinson, 136 N.J. at 491 (alterations in original) (quoting Mauricio, 117 N.J. at 412) (internal quotation marks omitted). "The generally accepted rule is that words alone, no matter how offensive or insulting, do not

constitute adequate provocation to reduce murder to manslaughter." Funderburg, 225 N.J. at 80 (quoting State v. Crisantos, 102 N.J 265, 274 (1986)). Notwithstanding these parameters, the Supreme Court has "acknowledge[d] and embrace[d] the 'trend away from the usual practice of placing the various types of provocatory conduct into pigeon-holes . . . .'" State v. Perry, 124 N.J. 128, 159 (1991) (quoting Mauricio, 117 N.J. at 414) (citing 2 LaFave & Scott, Substantive Criminal Law § 7.10 at 256 (2d ed.1986)).

Concerning the cooling-off period, the Supreme Court has said "it is well-nigh impossible to set specific guidelines in temporal terms," therefore "[t]rial courts are . . . remitted to the sense of the situation as disclosed by the facts." Mauricio, 117 N.J. at 413. In Mauricio, where the defendant argued with a bar bouncer, left, and returned to commit a homicide within a duration of "anywhere from fifteen minutes to forty-five minutes (the issue was in dispute)," the Court observed:

> [n]or can we say that as a matter of law the time period between defendant's altercation with the bouncer and humiliation at being ejected and his shooting of the victim — something over half an hour — was such that no jury could rationally determine that a reasonable person's inflamed passions might not have cooled sufficiently to permit the return of self-control.
>
> [Id. at 415-16.]

13

Having carefully reviewed the facts of this case, we conclude they do not require a sua sponte charging of attempted passion/provocation manslaughter or fourth-degree assault by auto. As evidenced in counsel's closing argument, the defense here was all or nothing. As defense counsel put it,

> Mr. Murrill sits before you today because of a lie. . . . He sits here before you today because a lie that told to cover up the fact that it was [Joyce], not Mr. Murrill, who introduced the gun to that apartment on November 8th. . . . Make no mistake. The truth of this case is that Mr. Murrill did not attack [Joyce], he did not attack [Annie].
> . . .
> Because the truth in this case is that . . . Mr. Murrill never attacked [Joyce], he never attacked [Annie], he is not guilty of these charges.

Having disclaimed being the aggressor or having any intent of any kind to harm Joyce or Annie at any point, it would have fundamentally undermined defendant's theory of the case for the court to have sua sponte charged attempted passion/provocation manslaughter or assault by auto. This proved to be an effective defense strategy in that defendant was entirely acquitted of all offenses related to the gun and knife attacks within the apartment. As counsel convincingly argued, defendant did not stab Joyce out of passion; he did not stab her at all. Instead, Joyce suffered wounds incidentally, due to "glancing blows that are [admittedly] ugly, but not life threatening, without any kind of defensive

14

wounds." "That fight happened . . . and ended when Mr. Murrill successfully disarmed her. The knife's no longer in the picture, and so the fight comes to an end."

Correspondingly, the State did not argue that defendant acted out of rage in the moment without sufficient time to cool off, but instead out of long-simmering anger over unrequited love and jealousy about Joyce seeing other men. This was a case about credibility; either defendant intended to harm Joyce or he didn't. The State countered the defense's claim that Joyce and Annie were the aggressors by urging the jury to find they had no motive to lie about defendant being the aggressor. As the prosecutor phrased it, "What makes sense? What was corroborated? Who has a motive to lie?" Thus, concerning the vehicle's intended course, the prosecutor said:

> And when you're thinking about motive, look at S-79. What did we hear? This is the sidewalk in the bottom of S-79. We saw the video. The street is not even in the picture. How far did the defendant have to go off the road to hit [Joyce]? This wasn't an accident. She wasn't standing in the middle of the road. This isn't a crosswalk over here. If she didn't get up, she would be under the car.

Counsel's defense was not that defendant drove with reckless indifference to human life; it was that he took no action nor possessed a state of mind of any kind to cause harm. Accordingly, defendant did not request a charge of assault

15

by auto under N.J.S.A. 2C:12-1(c)(1) as a lesser-included offense of third-degree aggravated assault under N.J.S.A. 2C:12-1(b)(12), nor did counsel object to the absence of any such charge to the jury. Again, we apply a "clearly indicated" standard of review. Neither charge sought here for the first time on appeal was "clearly indicated" by the record or arguments of either counsel.

Finally, we note that having concluded that the trial court did not err in failing to sua sponte administer an attempted passion/provocation manslaughter charge, and considering defendant received the lowest possible range of sentence on a concurrent sentence for attempted murder, any error by the court in not gratuitously charging a fourth-degree offense assault by automobile is, as a practical matter, rendered harmless. State v. Cuff, 239 N.J. 321, 346-47 (2019).

404(b) Ruling

Regarding defendant's third argument, we note the well-established standard that criminal trial court rulings on evidential admissibility are entitled to a strong degree of deference and are reviewed under an abuse of discretion standard. State v. Prall, 231 N.J. 567, 580 (2018). Such rulings are therefore upheld unless "there has been a clear error of judgment." State v. J.A.C., 210 N.J. 281, 295 (2012) (quoting State v. Brown, 170 N.J. 138, 147 (2001)). "An

appellate court applying this standard should not substitute its own judgment for that of the trial court, unless 'the trial court's ruling is so wide of the mark that a manifest denial of justice resulted.'" Ibid. (quoting Brown, 170 N.J. at 147).

The pertinent evidence rules are N.J.R.E. 401 (relevance), N.J.R.E. 403 (discretionary grounds for exclusion of relevant evidence), and N.J.R.E. 404(b) (character proof). In making its ruling and issuing a limiting instruction to the jury, we are satisfied that the trial court adhered to all of these rules. Even if we were to adopt defendant's contentions of error, the alleged errors were not "clearly capable" of depriving him a fair trial, as highlighted by the fact that the jury acquitted defendant of all charges associated with the alleged attack with a knife and gun inside the apartment. See R. 2:10-2. This signals the jurors were not persuaded the apartment attack actually occurred. Having reached that conclusion, the jurors were not likely to have been prejudiced by the 404(b) evidence with respect to the other charges.

Instruction to the Jury on Attempt under N.J.S.A. 2C:5-1(a)(1)

Defendant maintains the trial court erred in instructing on the impossibility theory of attempt. In State v. Condon, 391 N.J. Super. 609 (App. Div. 2007), the jury was instructed on two theories of attempt - impossibility and substantial step. Defendant was found guilty of attempted sexual assault.

17

However, the impossibility theory was inapplicable since defendant did not complete the criminal act. Accordingly, we reversed, reasoning that it "cannot determine whether the jury convicted defendant solely under the impossibility theory [], and but for unknown reasons, would have acquitted him under [the substantial step theory]." Id. at 617-18.

By contrast, the State's theory here was that defendant drove his car directly at Joyce with the intent to kill her, knowing she was sitting on the curb. The video footage shows defendant's car crashed into Joyce with enough force to throw her into the air. Testimony at trial revealed she was hospitalized for a week and suffered permanent hip pain due to the collision. Thus, as charged by the trial court, defendant's conduct would constitute the crime of murder "if the attendant circumstances were as a reasonable person would believe them to be." N.J.S.A. 2C:5-1(a)(1).

At defendant's request, the jury was instructed on a single theory - that due to a jammed steering wheel, it was impossible for defendant to have intentionally attempted to murder Joyce. In rendering a guilty verdict, the jury rejected this all-or-nothing theory pertaining to attempt.

Defendant maintains the jury was confused by the charge on impossibility. To determine its overall effect, the charge must be read as a whole, and not just

18

the challenged portion.  State v. Garrison, 228 N.J. 182, 201 (2017).  The trial

court instructed the jury as follows:

> If the defendant's conduct would have caused the death
> of the victim had the facts been as a reasonable person
> would believe them to be, you should consider the
> evidence of the guilt of the attempt to purposely cause
> the victim's death.  It does not matter if the defendant
> was frustrated in accomplishing his objective because
> the facts were not as a reasonable person would believe
> them to be.  It is no defense the defendant did not
> succeed in accomplishing his goal because of
> circumstances unknown to the defendant.  In order for
> you to find defendant guilty of attempted murder, the
> State must prove beyond a reasonable doubt the
> defendant's purpose was to cause the death of the
> victim.

The jury sent a note to the court requesting clarification on the phrase "if

the attendant circumstances were as a reasonable person would believe them to

be."  The trial court properly explained that

> attendant circumstances refers to the facts surrounding
> the events.  As such, the second part of that second
> element of attempted murder offense means if the
> surrounding circumstances were as a reasonable person
> would believe them to be.  Here, a reasonable person is
> a person of ordinary prudence and intelligence.

The trial court's explanation was straightforward, consistent with the

model charge, and remedied any ambiguities.  The charge as a whole was

appropriate and not clearly capable of producing an unjust result.  Rule 2:10-2.

Judgment of Conviction

As argued in Point IV and conceded by the State, the sole issue regarding the sentence imposed is that the judgment of conviction incorrectly records defendant was convicted of second-degree aggravated assault. Although defendant was originally indicted for second-degree aggravated assault, N.J.S.A. 2C:12-l(b)(1), the State amended that charge to third-degree aggravated assault during trial. Defendant was convicted of third-degree aggravated assault. N.J.S.A. 2C:12-l(b)(12). The judgment of conviction must be amended to correct this error.

The trial court shall amend the judgment of conviction to reflect defendant's conviction for third-degree aggravated assault.

Defendant's conviction and sentence are affirmed.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

M.C. Hawley

Clerk of the Appellate Division