**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2434-16T3

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

FRANCISCO MONTEROTORIVO,

    Defendant-Appellant.

_____

Submitted February 12, 2018 — Decided July 18, 2018

Before Judges Messano and Vernoia.

On appeal from Superior Court of New Jersey, Law Division, Atlantic County, Indictment No. 14-07-2351.

Joseph E. Krakora, Public Defender, attorney for appellant (Michele E. Friedman, Assistant Deputy Public Defender, of counsel and on the briefs).

Damon G. Tyner, Atlantic County Prosecutor, attorney for respondent (Dylan P. Thompson, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

    Defendant Francisco Monterotorivo appeals from his conviction following a jury trial for first-degree attempted murder, second-

degree aggravated assault, third-degree aggravated assault with a deadly weapon, fourth-degree aggravated assault with a deadly weapon, and fourth-degree assault by motor vehicle. Defendant also challenges the court's imposition of an aggregate eleven-year sentence subject to the requirements of the No Early Release Act (NERA), N.J.S.A. 2C:43-7.2. We reverse defendant's convictions and remand for a new trial.

## I.

The criminal charges against defendant arise from an October 13, 2013 incident that occurred in front of the Somers Point home he shared with his girlfriend Mary Gettle, her mother Lourdes Hernandez, son Christopher Gettle, and four-year old daughter, A.M. Early in the afternoon, Mary Gettle's ex-husband and A.M.'s father, Edgar Martinez, picked up A.M. and Hernandez at defendant's home to take them shopping.

When Martinez later returned with A.M. and Hernandez, defendant's Ford Expedition was parked in the driveway. Martinez stopped his car in the road at the end of the driveway. Hernandez exited Martinez's vehicle and went to the home's porch, where she told Christopher Gettle to retrieve A.M. and groceries from Martinez's vehicle. Christopher Gettle went to Martinez's vehicle, obtained the groceries and brought A.M. into the home. Martinez remained in the vehicle during this time.

2                                                                    A-2434-16T3

While Christopher Gettle collected the groceries and A.M. from Martinez's vehicle, defendant exited the house, spoke with Hernandez briefly on the porch, and entered his vehicle in the driveway to depart for work. He could not, however, leave because Martinez's car blocked the driveway.

Martinez testified defendant sounded the horn on his vehicle and, in response, Martinez moved his car so he no longer blocked the driveway. He then realized A.M. left food and ice cream in his car, so he exited his vehicle, reached into it, took the food and ice cream in his hand, and began walking along the curb near his parked vehicle toward the driveway and defendant's home. As he did so, defendant backed his vehicle out of the driveway and moved it directly toward Martinez.

Martinez said that when defendant's vehicle was only one meter away, he extended his arm and hand toward defendant's vehicle as if to say "stop," but defendant's vehicle continued to move toward him and struck him, causing broken bones and other serious physical injuries resulting in a four-month hospital stay and three surgeries. Defendant's vehicle also struck and caused damage to Martinez's parked car. Martinez stated that as defendant backed up his vehicle he said, "[w]hat the fuck are you doing here. And . . . today you are going to die dog." Martinez also testified that defendant laughed after hitting him.

3                                                        A-2434-16T3

Defendant testified that when he entered his vehicle, he started the engine so Martinez would move his vehicle from the driveway, but Martinez "didn't bother." Defendant said he honked his horn, and Martinez moved his vehicle away from the driveway but appeared "bothered" for having to do so.

According to defendant, while he backed his car out of the driveway, he saw Martinez "step[] out suddenly out of his car . . . lean[] over [and] try[] to grab something." Defendant saw Martinez had something in his hand and point the object at him. Defendant applied the brake and ducked down in the driver's seat, because he believed Martinez held a gun.[1] Defendant said at that time his vehicle accelerated sideways.

Defendant testified he felt an impact on the right corner of his vehicle, applied the brake and exited the vehicle but did not see anything. He drove his vehicle back onto the driveway where he waited until the police arrived.

Defendant also testified that three or four months earlier, he spoke with Martinez on the phone when Martinez called Mary Gettle. Defendant said Martinez threatened to kill him the next time he saw him. Defendant testified that he believed Martinez was fulfilling the threat when he approached defendant and extended

---

[1] Martinez was actually holding a Wendy's bag containing fries and a chocolate "Frosty."

his hand and arm with what defendant believed was a gun. During his testimony, Martinez conceded he threatened defendant during the telephone conversation, but explained that defendant also threatened him.

Somers Point patrolman John Conover was one of the officers who arrived at the scene following the incident. He explained that due to the seriousness of Martinez's injuries, the police conducted an investigation of what they thought could be a fatal accident. Conover testified he had been assigned to the Traffic Safety Unit for many years, had extensive training in motor vehicle accident investigations, and had investigated more than 1000 motor vehicle accidents.

Conover described the damages to defendant and Martinez's vehicles, and explained various measurements of the scene made by the police. Conover was asked if, based on his observations and the data collected, he made "a determination [of] how the ultimate crash occurred . . . [.]" Defense counsel objected to the testimony, arguing Conover had not provided an expert report, but was offering an expert opinion. The court overruled the objection. Conover then testified in detail concerning the manner in which he believed the incident occurred.

Somers Point patrolman David Ficca testified that when he arrived at the scene, he first observed defendant bloodied and in

pain lying in the road under his vehicle, with one of his legs on the curb. Emergency medical technicians arrived and tended to Martinez. Ficca spoke to defendant, who remained in the driveway with his vehicle.

Defendant was arrested at the scene and subsequently charged in an indictment with one count of first-degree attempted murder, N.J.S.A. 2C:5-1 and N.J.S.A. 2C:11-3(a)(1)(2) (count one), one count of second-degree aggravated assault, N.J.S.A. 2C:12-1(b)(1) (count two), one count of third-degree aggravated assault with a deadly weapon, N.J.S.A. 2C:12-1(b)(2) (count three), one count of fourth-degree aggravated assault with a deadly weapon, N.J.S.A. 2C:12-1(b)(3), (count four), and one count of fourth-degree aggravated assault by automobile, N.J.S.A. 2C:12-1(c) (count five).

Prior to his trial, the court conducted a Miranda[2] hearing, and suppressed statements made by defendant to Ficca at the scene. By leave granted, we heard the State's appeal of the court's suppression order, and reversed. See State v. Monterotorivo, No. A-1565-14 (App. Div. June 16, 2015) (slip op. at 11-12).

The jury convicted defendant of all of the charges in the indictment. At sentencing, the court merged counts two, three,

---

[2] Miranda v. Arizona, 384 U.S. 436 (1966).

four and five into count one, and imposed an eleven-year custodial term subject to NERA's requirements. The court further ordered that defendant pay $5581.97 in restitution. This appeal followed.

On appeal, defendant makes the following arguments:

POINT I

THE COURT ABUSED ITS DISCRETION IN DENYING THE MOTION FOR A MISTRIAL WHEN THE PROSECUTOR SUGGESTED THAT THE DEFENDANT FAILED TO ADVISE POLICE OF HIS SELF-DEFENSE CLAIM AT THE SCENE ON CROSS-EXAMINATION. WHEN THE PROSECUTOR REPEATED THE SAME ARGUMENT DURING SUMMATION, THE JURY HAD BEEN TAINTED, SUCH THAT THE COURT HAD AN INDEPENDENT OBLIGATION TO DECLARE A MISTRIAL SUA SPONTE.

POINT II

THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN FAILING TO CHARGE THE JURY ON THE LESSER-INCLUDED OFFENSE OF ATTEMPTED PASSION/PROVOCATION MANSLAUGHTER.

POINT III

THE COURT COMMITTED REVERSIBLE ERROR WHEN PERMITTING THE STATE TO INTRODUCE ACCIDENT-RECONSTRUCTION TESTIMONY FROM AN OFFICER WHO WAS NOT QUALIFIED AS AN EXPERT, AND IN FAILING TO ISSUE AN EXPERT JURY CHARGE WITH RESPECT TO THAT TESTIMONY.

A. Officer Conover, a Lay Witness, Should Have Been Prohibited from Providing Accident-Reconstruction Testimony, Because His Testimony Required Specialized Knowledge Beyond the Ken of an Average Juror.

B. The Court Erred in Failing to Issue an Expert Jury Instruction Regarding the Officer's Accident-Reconstruction Testimony.

7

C. The Improper Admission of the Officer's Accident-Reconstruction Testimony, Coupled With the Omission of an Expert Jury Charge for this Testimony Warrants Reversal.

POINT IV

IN THE ALTERNATIVE, THE MATTER SHOULD BE REMANDED FOR RESENTENCING BECAUSE THE COURT ERRONEOUSLY FOUND AGGRAVATING FACTORS THREE, SIX, AND NINE.

II.

Defendant first contends the court abused its discretion by denying his mistrial motion after the State elicited testimony that he failed to advise the police that he acted in self-defense when the police first questioned him at the scene. Defendant argues the prosecutor's questions violated his constitutional right to remain silent. Defendant argues the court further erred by giving a curative instruction requiring only that the jury ignore the prosecutor's question. Defendant further asserts the State violated his constitutional right to remain silent by arguing in summation that defendant failed to advise the police that Martinez had a weapon.

"A mistrial should only be granted 'to prevent an obvious failure of justice.'" State v. Smith, 224 N.J. 36, 47 (2016) (quoting State v. Harvey, 151 N.J. 117, 205 (1997)). "Whether an event at trial justifies a mistrial is a decision 'entrusted to the sound discretion of the trial court.'" Ibid. (quoting Harvey,

151 N.J. at 205). We "will not disturb a trial court's ruling on a motion for a mistrial, absent an abuse of discretion that results in a manifest injustice." Ibid. (quoting State v. Jackson, 211 N.J. 394, 407 (2012)).

"To address a motion for a mistrial, trial courts must consider the unique circumstances of the case." Ibid. (citing State v. Allah, 170 N.J. 269, 280 (2002); State v. Loyal, 164 N.J. 418, 435-36 (2000)). "If there is 'an appropriate alternative course of action,' a mistrial is not a proper exercise of discretion." Ibid. (quoting Allah, 170 N.J. at 281). "For example, a curative instruction, a short adjournment or continuance, or some other remedy, may provide a viable alternative to a mistrial, depending on the facts of the case." Ibid.

During his direct examination, defendant explained that prior to accelerating his vehicle into Martinez, he observed Martinez raise his hand toward him with what he believed was a gun. Defendant's request for a mistrial is founded on the following colloquy during the prosecutor's cross-examination concerning that testimony:

> Prosecutor: Okay. Now, after — after you assaulted Edgar Martinez, after you accelerated into him, you said you waited at the scene, is that correct?
>
> Defendant: What was that?

Prosecutor: You said — you told us that you remained at the scene after the assault?

Defendant: Yes.

Prosecutor: Okay. And you spoke to an officer, a police officer at the scene?

Defendant: I tried to explain what had happened, but he didn't understand me.

Prosecutor: Okay. You actually explained to him that it was an accident, is that right?

Defendant: Yes.

Prosecutor: Okay. And you didn't tell any officer at that time that you thought the victim had a — that Edgar Martinez had a weapon, did you?

Defendant: Well, I — practically I didn't say that. I was nervous.

Prosecutor: But you didn't tell anybody until today? This is the first time, is that correct?

Defense counsel objected to the final question, argued it was improper, and moved for a mistrial. The judge denied the motion, stating he would "tell the jury to disregard the question."[3] The

---

[3] The judge also said to defense counsel, "Do you think I'm going to mis-try this case with these two resident aliens with — with interpreters, and with everything else that's going on? Do you think I'm going to mis-try this case? Really?" Such considerations have no place in the determination of a mistrial motion, but we decide only whether the court's denial of the motion is correct, and not its reasoning. See Do-Wop Corp. v. City of Rahway, 168 N.J. 191, 199 (2001) (explaining "appeals are taken from orders and judgments and not from . . . reasons given for the ultimate conclusion").

judge then instructed the jury that the prosecutor's "last question . . . is an improper question" and was to be "disregarded." The court informed the jury to "just disregard that question as if was not asked."

The mistrial motion premised on the alleged improper questions, "But you didn't tell anybody until today? This is the first time, is that correct?" Defense counsel made a timely objection, which the court sustained by finding the questions were improper, and defendant never answered the questions. The court immediately provided a clear and direct curative instruction advising the jury to disregard the prosecutor's question. Defendant did not object to the curative instruction or request that any further instructions be provided, and we assume the jury followed the court's instructions. See State v. Little, 296 N.J. Super. 573, 580 (App. Div. 1997) ("We assume the jury followed the court's instructions."). We therefore discern no error in the court's denial of defendant's mistrial motion. Defendant fails to establish the court's use of the curative instruction in response to the prosecutor's improper question resulted in a manifest injustice.

Defendant also argues he was denied a fair trial because the prosecutor asked on cross-examination if he told any officer at the scene that Martinez had a weapon. In response, defendant

11

testified that he had not.  Defendant argues the question and his response violated his right to remain silent.

We consider the argument under the plain error standard, R. 2:10-2, because defendant did not object to the prosecutor's question or statement during summation, see State v. Daniels, 182 N.J. 80, 95 (2004) (holding the plain error standard of review applies where there was no objection to a question at trial). Plain error is a "[l]egal impropriety . . . prejudicially affecting the substantial rights of the defendant and sufficiently grievous to justify notice by the reviewing court and to convince the court that of itself the error possessed a clear capacity to bring about an unjust result."  State v. Camacho, 218 N.J. 533, 554 (2014) (first alteration in original) (quoting State v. Adams, 194 N.J. 186, 207 (2008)).

A defendant has a constitutional right to remain silent. U.S. Const. amend. V; State v. Brown, 190 N.J. 144, 153 (2007).  New Jersey does not have a state constitutional equivalent to the Fifth Amendment.  Our "privilege against self-incrimination . . . is deeply rooted in this State's common law and codified in both statute and an evidence rule."  State v. Muhammad, 182 N.J. 551, 567 (2005).  N.J.S.A. 2A:84A-19 and its corollary N.J.R.E. 503 provide that "every natural person has a right to refuse to disclose in an action or to a police officer or other official any

matter that will incriminate him or expose him to a penalty or a forfeiture of his estate . . . ."

In New Jersey, it is "fundamental" that a criminal suspect has the right to remain silent when in police custody or interrogation, State v. Deatore, 70 N.J. 100, 114 (1976), and that when such an individual expressly refuses to answer police queries, "no inference can be drawn against him under the doctrine of acquiescence or any other concept," id. at 115 (quoting State v. Ripa, 45 N.J. 199, 204 (1965)).

In Muhammad, 182 N.J. at 558, the defendant was charged with sexual assault. During trial, the prosecutor made repeated references to the defendant's failure to inform the police that his sexual encounter with the victim was consensual, a position asserted for the first time at trial. Id. at 562. The Court held the fact that "the defendant gave only a partial account to the police at or near the time of his arrest did not open the door to prosecutorial questioning about what the defendant did not tell to the police." Id. at 571. The Court reasoned that a jury should not be able to infer guilt from a suspect's silence, because we "cannot know whether a suspect is acquiescing to the truth of an accusation or merely asserting his privilege[.]" Id. at 567.

It is permissible, however, for the State to "point out differences in the defendant's testimony at trial [if] his

[earlier] statements . . . were freely given." <u>State v. Tucker</u>, 190 N.J. 183, 189 (2007). "A defendant's right to remain silent is not violated when the State cross-examines a defendant on the differences between a post-<u>Miranda</u> statement and testimony at trial." <u>Ibid.</u> Thus, our Supreme Court has determined that a defendant can be cross-examined at trial about facts he or she failed to divulge during voluntary interviews with police, but about which he or she testifies for the first time at trial. <u>Id.</u> at 186-90. The Court held that the State's use of such inconsistences "did not constitute an unconstitutional comment on [the defendant's] silence." <u>Id.</u> at 190.

In <u>State v. Kucinski</u>, 227 N.J. 603, 608 (2017), the defendant gave a voluntary statement to the police during which he did not disclose facts about which he testified at trial. The Court again held the defendant had waived his right to remain silent in providing his statements to the police, and that any conflicts between his direct testimony at trial and his voluntary statement were appropriate topics for cross-examination by the prosecutor. <u>Id.</u> at 623-24.

Here, we have determined plaintiff was not the subject of a custodial interrogation when he spoke to Ficca at the scene, and it was unnecessary that Ficca inform defendant of his <u>Miranda</u> rights. <u>Monterotorivo</u>, slip op. at 10. Thus, there is no dispute

that defendant's statements to Ficca at the scene were voluntary.[4] During his interaction with Ficca at the scene, defendant said he accidentally struck Martinez as he backed out of his driveway, but did not say that he believed Martinez had a weapon. Defendant testified at trial, however, that he believed Martinez had a weapon.

The prosecutor's question - whether defendant advised any officer at the scene that Martinez had a weapon - was properly limited to inconsistencies between the voluntary statements defendant provided to Ficca at the scene and his trial testimony. The question therefore did not implicate or violate defendant's right to remain silent. See Kucinski, 227 N.J. at 623-24; Tucker, 190 N.J. at 190.

We also reject defendant's contention that the prosecutor's summation violated his state law privilege against self-incrimination. The prosecutor argued to the jury:

> [a]gain, this defendant mentioned what he thought was a weapon and you heard from so many witnesses, not one of those people

---

[4] We are aware that "[o]ur state law privilege [to remain silent] does not allow a prosecutor to use at trial a defendant's silence when that silence arises 'at or near' the time of arrest, during official interrogation, or while in police custody[.]" Muhammad, 182 N.J. at 569 (citations omitted). We have noted that defendant was not the subject of a custodial interrogation only because it provides a basis for our prior holding that the State proved defendant's statements to Ficca were voluntary beyond a reasonable doubt. Monterotorivo, slip op. at 11-12.

> involved ever mentioned what they thought
> would be a weapon. He never told Officer Ficca
> or any other officer at the scene that a weapon
> was involved. He never mentioned it.

The prosecutor's argument was carefully tailored to the permissible evidence showing an inconsistency between defendant's voluntary statements to the police at the scene and his trial testimony. For the same reasons, the prosecutor's argument based on that testimony neither implicated defendant's right to remain silent nor constituted plain error. See Kucinski, 227 N.J. at 623-24; Tucker, 190 N.J. at 190.

### III.

Defendant next argues the court erred by failing to sua sponte charge the jury on attempted passion/provocation manslaughter as a lesser-included offense of attempted murder. Defendant claims the evidence "clearly indicated that" he may have committed attempted passion/provocation manslaughter because "the jury could have easily found that his actions constituted imperfect self-defense."

The State argues the trial court correctly omitted the passion/provocation manslaughter charge to the jury, because the record, after applying an objective standard, does not provide a "clear indication . . . defendant was adequately provoked" to

satisfy the two objective elements of passion/provocation manslaughter.

Defendant was charged with first-degree attempted murder. Defendant did not request an instruction on attempted passion/provocation manslaughter as a lesser-included offense, and did not object to the court's charge which lacked the instruction. We therefore consider defendant's argument under the plain error standard, R. 2:10-2, and will reverse only if the error is sufficient to raise a "reasonable doubt . . . as to whether the error led the jury to a result it otherwise might not have reached." State v. Funderburg, 225 N.J. 66, 79 (2016) (alteration in original) (quoting State v. Jenkins, 178 N.J. 347, 361 (2004)).

"[A] defendant is entitled to a charge on a lesser included offense supported by the evidence," State v. Short, 131 N.J. 47, 53 (1993), and a trial judge "has an independent obligation to instruct on lesser-included charges when the facts adduced at trial clearly indicate that a jury could convict on the lesser while acquitting on the greater offense," Jenkins, 178 N.J. at 361; accord Funderburg, 225 N.J. at 81. For the record to clearly indicate a lesser-included charge is warranted, the evidence must "jump[] off the page." State v. Denofa, 187 N.J. 24, 42 (2006). When the evidence at trial indicates that a jury could convict on a lesser-included charge, such a charge must be given. Jenkins,

178 N.J. at 361. However, a trial judge "shall not charge the jury with respect to an included offense unless there is rational basis for a verdict convicting the defendant of the included offense." N.J.S.A. 2C:1-8(e).

Here, defendant argues the court erred by failing to charge attempted passion/provocation manslaughter, a lesser-included offense of attempted murder. See State v. Robinson, 136 N.J. 476, 488-89 (1994). There are four elements to passion/provocation manslaughter: "[1] the provocation must be adequate; [2] the defendant must not have had time to cool off between the provocation and the slaying; [3] the provocation must have actually impassioned the defendant; and [4] the defendant must not have actually cooled off before the slaying." State v. Mauricio, 117 N.J. 402, 411 (1990); accord State v. Carrero, 229 N.J. 118, 129 (2017). "The first two criteria are objective, and the latter two are subjective." Funderburg, 225 N.J. at 80.

"For a trial court to be required to charge a jury sua sponte on attempted passion/provocation manslaughter, the court 'must find first that the two objective elements of [the offense] are clearly indicated by the evidence.'" Id. at 82 (alteration in original) (quoting Robinson, 136 N.J. at 491). The subjective elements are to be determined by the jury. Ibid.

18

The first element, the adequacy of the provocation, is measured by an objective standard: the provocation "must be 'sufficient to arouse the passions of an ordinary [person] beyond the power of his [or her] control.'" State v. Foglia, 415 N.J. Super. 106, 126 (App. Div. 2010) (alterations in original) (quoting Mauricio, 117 N.J. at 412); accord Robinson, 136 N.J. at 491. Thus, defendant's reason for taking the actions he "did, or as he claimed []he did, [is] irrelevant because the 'test is purely objective, [and] the provocation must be "sufficient to arouse the passions of an ordinary [person] beyond the power of his [or her] control.'" Foglia, 415 N.J. Super. at 126 (third, fourth and fifth alterations in original) (quoting Mauricio, 117 N.J. at 412).

Here, there is no objective evidence demonstrating that Martinez's conduct provided sufficient provocation to arouse the passions of an ordinary person beyond his or her powers of control. See ibid. Although "a threat with a gun or knife might constitute adequate provocation[,]" Mauricio, 117 N.J. at 414, Martinez did not possess a gun, knife or any other weapon. To the contrary, the evidence showed Martinez held either a bag of food or his cellphone in his hand at the time defendant moved his vehicle toward Martinez. Such conduct does not provide an objective basis supporting a passion/provocation manslaughter charge. Cf. State

19 <span>A-2434-16T3</span>

v. Powell, 84 N.J. 305, 321-22 (1980) (holding that the defendant's statement that the victim attempted to wrestle the defendant's gun away from him during an argument sufficiently established adequate provocation, even though the defendant had previously given a different story to the authorities); State v. Bonano, 59 N.J. 515, 523-24 (1971) (holding that a verbal threat alone is insufficient to reduce the degree of the crime, however, a menacing gesture with the weapon could properly be considered adequate provocation); State v. Blanks, 313 N.J. Super. 55, 72 (App. Div. 1998) (holding the history of belligerence and discovery of a long-handled cooking fork on the floor at the victim's side, was sufficient to suggest that the victim may have brandished the fork and further provoked the defendant); State v. Vigilante, 257 N.J. Super. 296, 301-02, 305-06 (App. Div. 1992) (holding that a prior history of abuse, threats to kill, and the fact that the victim "bent down to pick up a pipe wrench" all indicated reasonable provocation). Here there is no objective evidence establishing the first element of passion/provocation manslaughter — that the provocation was adequate — and the court did not err by failing to charge the jury on the crime as a lesser-included offense. Funderburg, 225 N.J. at 82 (holding that a trial court is required to sua sponte charge passion/provocation manslaughter only where

the two objective elements of the offense are clearly indicated in the evidence).

Defendant also contends the court was obligated to charge passion/provocation manslaughter based on the concept of imperfect self-defense. We disagree.

Imperfect self-defense does not satisfy the required objective elements of passion/provocation manslaughter because, by definition, it is "no more than an honest subjective belief on the part of [a defendant] that his or her actions were necessary for his or her safety, even though an objective appraisal by reasonable people would have revealed not only that the actions were unnecessary, but also that the belief was unreasonable." State v. O'Carroll, 385 N.J. Super. 211, 237 (App. Div. 2006) (quoting State v. Bowens, 108 N.J. 622, 628 (1987)); see also State v. Bass, 224 N.J. 285, 309 n.6 (2016) (defining the "concept of 'imperfect self-defense'" as "the defendant's subjective, yet unreasonable, belief that his or her safety is endangered"). Defendant's alleged subjective and unreasonable belief that force was required, upon which his imperfect self-defense claim is based, is wholly inconsistent with the objective standard required to prove the adequacy of the provocation element of passion/provocation manslaughter.

Defendant appears to contend that evidence showing imperfect self-defense required an instruction on passion/provocation manslaughter because it established an element of the offense, adequacy of provocation, which the objective evidence otherwise failed to demonstrate. However, evidence of imperfect self-defense does not prove an element of a criminal offense. As the Court explained in State v. Williams, 168 N.J. 323, 334 (2001), self-defense is an affirmative defense under the New Jersey Code of Criminal Justice, see N.J.S.A. 2C:3-4, which "can excuse a defendant from responsibility for a crime that the State has proved against him only if certain statutory requirements [under N.J.S.A. 2C:3-4] are met." In order to satisfy the statutory requirements for self-defense, a defendant must "honestly and reasonably believe[] that the use of defensive force was necessary."[5] Williams, 168 N.J. at 334.

Imperfect self-defense is not recognized under the Code, State v. Pridgen, 245 N.J. Super. 239, 246 (App. Div. 1991), and is deemed "imperfect" because it does not satisfy the requirements of N.J.S.A. 2C:3-4, Williams, 168 N.J. at 334. "Thus, if a defendant was not reasonable in believing in the need to use defensive force, he [or she] could not invoke the affirmative

---

[5] Here, the court instructed the jury on the elements of self-defense.

defense of justification because [the] evidence would be 'imperfect' for that purpose." Ibid. However, the evidence may be "used for another purpose for which the Legislature had not established both the honest and reasonable requirements[,]" such as demonstrating that the State failed to prove the "mental element" of a charged offense. Id. at 334-35; see also Bowens, 108 N.J. at 636 (finding the defendant was not entitled to an imperfect self-defense charge, but was entitled to an instruction that the jury consider evidence that he had an "honest, if not reasonable, belief in the necessity of force," because the evidence was relevant to whether the State proved "he acted purposely or knowingly"). Evidence of imperfect self-defense therefore supports "a failure of proof defense[.]" Williams, 168 N.J. at 333; see also id. at 335 (finding evidence of imperfect self-defense is admissible "as bearing on the State's proof of the mental element" of an offense).

We are therefore convinced there is no merit to defendant's contention that the court erred by failing to sua sponte charge the jury on the lesser-included offense of passion/provocation manslaughter based on the concept of imperfect self-defense. [6]

---

[6] Because we reverse on other grounds, we offer no opinion as to the lesser-included offenses that should be charged in defendant's retrial. That determination must abide by the evidence introduced at the retrial.

A-2434-16T3

Defendant argues the court erred by overruling his objection to Conover's testimony describing the movement of defendant's vehicle, the manner in which Martinez was struck by defendant's vehicle, and the ensuing collision between defendant and Martinez's vehicles. Defendant contends Conover's testimony constituted an inadmissible expert opinion, the State did not provide an expert report prior to trial, and the court failed to provide the jury with an expert opinion instruction concerning Conover's testimony. The State argues the court did not commit error because Conover's testimony constituted a permissible lay opinion under N.J.R.E. 701.

Defendant objected to Conover's testimony, and we therefore review the court's admission of the testimony under the harmless error standard, R. 2:10-2, which requires that we determine if there is "some degree of possibility that [the error] led to an unjust" result. State v. R.B., 183 N.J. 308, 330 (2005) (alteration in original) (quoting State v. Bankston, 63 N.J. 263, 273 (1973)). To require reversal, "[t]he possibility must be real, one sufficient to raise a reasonable doubt as to whether [it] led the jury to a verdict it otherwise might not have reached." Ibid. (second alteration in original) (quoting Bankston, 63 N.J. at 273).

"[T]he decision to admit or exclude evidence is one firmly entrusted to the trial court's discretion." Estate of Hanges v. Metro. Prop. & Cas. Ins. Co., 202 N.J. 369, 383-84 (2010); see also State v. Zola, 112 N.J. 384, 414 (1988) ("The necessity for, or propriety of, the admission of expert testimony, and the competence of such testimony, are judgments within the discretion of the trial court."). When the trial court applies the wrong legal test when analyzing admissibility, we review the issue de novo. Konop v. Rosen, 425 N.J. Super. 391, 401 (App. Div. 2012).

Lay opinion testimony is governed by N.J.R.E. 701:

> If a witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences may be admitted if it (a) is rationally based on the perception of the witness and (b) will assist in understanding the witness' testimony or in determining a fact in issue.

The witness's perception must "rest[] on the acquisition of knowledge through use of one's sense of touch, taste, sight, smell or hearing." State v. McLean, 205 N.J. 438, 457 (2011) (citations omitted). Lay opinions may not "intrude on the province of the jury by offering, in the guise of opinions, views on the meaning of facts that the jury is fully able to sort out . . . [or] express a view on the ultimate question of guilt or innocence." Id. at 461.

Permissible lay opinion testimony may describe a vehicle's speed, based on seeing or hearing it; and a person's intoxication, based on seeing, hearing, and smelling the person. Id. at 457 (citations omitted). Police officers may also offer lay opinions on such subjects as a person's narcotics intoxication, ibid. (citing State v. Bealor, 187 N.J. 574, 588-89 (2006)), the point of impact between vehicles involved in a collision, id. at 459 (citing State v. LaBrutto, 114 N.J. 187, 197-99 (1989)), and whether an area was a "high crime area", ibid. (citing Trentacost v. Brussel, 164 N.J. Super. 9, 19-20 (App. Div. 1978), aff'd, 82 N.J. 214 (1980)).

The admissibility of lay opinion testimony of police officers, however, "has been, as it must be, firmly rooted in the personal observations and perceptions of the lay witness in the traditional meaning of . . . [N.J.R.E] 701." Ibid. "[U]nlike expert opinions, lay opinion testimony is limited to what was directly perceived by the witness and may not rest on otherwise inadmissible hearsay." Id. at 460; see also N.J.R.E. 602 ("Except as otherwise provided by Rule 703 (bases of opinion testimony by experts), a witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter.").

In addition, "testimony in the form of opinion, whether offered by a lay or an expert witness, is only permitted if it will assist the jury in performing its function." McLean, 205 N.J. at 462. A witness is not permitted "to offer a lay opinion on a matter 'not within [the witness's] direct ken . . . and as to which the jury is as competent as he to form a conclusion[.]'" Id. at 459 (alteration in original) (quoting Brindley v. Firemen's Ins. Co., 35 N.J. Super. 1, 8 (App. Div. 1955)). For example, in McLean the Court determined a police officer could not properly offer a lay opinion that the defendant participated in a drug transaction based on his observations of the defendant's conduct, because the opinion was "on matters that were not beyond the understanding of the jury[,]" and constituted "an expression of a belief in defendant's guilt[.]" Id. at 463.

Expert testimony is governed by N.J.R.E. 702, which provides: "If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise." To be admissible under N.J.R.E. 702, the testimony must satisfy three requirements:

> (1) the intended testimony must concern a subject matter that is beyond the ken of the average juror; (2) the field testified to must

be at a state of the art such that an expert's testimony could be sufficiently reliable; and (3) the witness must have sufficient expertise to offer the intended testimony.

[State v. Kelly, 97 N.J. 178, 208 (1984); see also State v. Torres, 183 N.J. 554, 567-68 (2005)].

In McLean, the Court concluded "a question that referred to the officer's training, education and experience, in actuality called for an impermissible expert opinion." 205 N.J. at 463. In State v. Kittrell, 279 N.J. Super. 225, 236 (App. Div. 1995), we similarly held that an officer's testimony about the use of beepers in drug transactions constituted an expert, and not lay, opinion because it was based on the officer's extensive experience in drug-related arrests, and not his personal observations of the defendant using a beeper.

Applying these principles, we are convinced Conover's detailed testimony and use of a diagram detailing his beliefs as to the manner in which the incident occurred constituted putative expert, and not lay, opinion testimony. Conover testified about his extensive training and experience in accident investigations and, although he did not state that his opinions were founded on that training and experience, it is clear that they were. Otherwise, there was no need for the State to elicit testimony

concerning his extensive experience as a prelude to his opinion about how the incident occurred.

Moreover, his opinions were not based on his perceptions of defendant's and Martinez's actions because he was not present when the incident occurred. Indeed, his opinion was based on inadmissible hearsay information clearly obtained from others. He testified as to the original position of defendant's vehicle in the driveway, its movement out of the driveway, and the manner in which it struck a sign, a tree, and then "right after that" struck Martinez's vehicle and pushed it ten feet, even though he was not present. Although Conover relied on measurements and observations, his testimony described Martinez's movements, the movements of defendant and Martinez's vehicles, and the precise manner in which he "believed" the incident resulting in Martinez's injuries occurred. His testimony reconstructing the incident was not "firmly rooted in [his] personal observations and perceptions[,]" McLean, 205 N.J. at 459, was in part based on inadmissible hearsay, id. at 460.

Conover's testimony constituted inadmissible expert testimony because he was not qualified as an expert witness at trial. See State v. Odom, 116 N.J. 65, 71 (1989) (noting expert witnesses must "be suitably qualified and possessed of sufficient specialized knowledge" to offer opinion testimony). Moreover,

Conover testified without providing an expert report. See R. 3:13-3(b)(1)(I) (requiring that the State provide a defendant with an expert report or "statement of the facts and opinions to which an expert is expected to testify" prior to trial); see also LaBrutto, 114 N.J. at 205-06 (explaining the standards for exclusion of expert testimony where the State fails to provide an expert report). In addition, because the court incorrectly concluded Conover's testimony constituted an admissible lay opinion, it failed to instruct the jury that it was required to consider Conover's opinions in accordance with the standards for expert testimony. See Model Jury Charge (Criminal), "Expert Testimony" (rev. Nov. 10, 2003)

The determination of whether an erroneous admission of opinion testimony is "'clearly capable of producing an unjust result,' R. 2:10-2, or that the error 'led the jury to a verdict it otherwise might not have reached,'" is "made in the context of the entire record." State v. Sowell, 213 N.J. 89, 107-08 (2013) (internal citation omitted).

In many respects, the facts surrounding the incident were not disputed. Defendant admitted he operated his vehicle and caused Martinez's injuries. However, he denied doing so purposely or knowingly, and rested his defense on the claim that the incident was the result of either self-defense or simply an accident. Thus

the focus of the trial, and the fulcrum upon which defendant's guilt on the attempted murder, aggravated assault and weapons offenses turned, was defendant's state of mind as his car struck Martinez.

The admission of Conover's testimony raises a reasonable doubt as to whether it "led the jury to a verdict it otherwise might not have reached." R.B., 183 N.J. at 330. We are therefore constrained to reverse defendant's convictions and remand for a new trial. Conover's testimony was cloaked in his extensive experience and training. See State v. Cain, 224 N.J. 410, 427 (2016) (observing that expert testimony from a law enforcement officer with superior knowledge and experience "likely will have a profound influence on deliberations of the jury"). His opinion detailing the precise manner in which defendant operated his vehicle - by striking a sign, a tree, and then Martinez and his vehicle, and moving Martinez's vehicle ten feet — provided strong and seemingly objective evidence defendant drove his vehicle purposely and knowingly to kill or injure Martinez. Indeed, in the prosecutor's summation, she relied on Conover's testimony and his diagram of the incident to support the State's claim defendant intended to kill Martinez. In sum, Conover's opinion testimony provided affirmative evidence concerning defendant's state of mind and undermined defendant's version of the incident. In our view,

it was evidence that may have led the jury to a verdict it may not have otherwise reached.

Because we reverse and remand for a new trial, it is unnecessary that we address defendant's contention the court erred in imposing sentence.

Reversed and remanded.  We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION