**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5023-17T1

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

RAMON MARTINEZ,

     Defendant-Appellant.

_____

Argued October 30, 2019 — Decided November 21, 2019

Before Judges Koblitz, Whipple and Mawla.

On appeal from the Superior Court of New Jersey, Law Division, Passaic County, Indictment No. 15-06-0548.

Steven E. Braun argued the cause for appellant.

Ali Y. Ozbek, Assistant Prosecutor, argued the cause for respondent (Camelia M. Valdes, Passaic County Prosecutor, attorney; Christopher W. Hsieh, Chief Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Defendant Ramon Martinez appeals from a judgment of conviction for two counts of first-degree attempted murder, N.J.S.A. 2C:5-1 and N.J.S.A. 2C:11-3(a); two counts of third-degree aggravated assault, N.J.S.A. 2C:12-1(b)(2); and one count of third-degree possession of a weapon for an unlawful purpose, N.J.S.A. 2C:39-4(d). He also challenges his sentence. We affirm.

The following facts were adduced at trial. Late one evening in September 2014, Alex Mena decided to shoot pool with Nicholas Garcia, Daniel Aguilar, and Joel "Aranita" Orton at a liquor store and bar in Paterson. When they arrived, Mena sat at the counter and ordered a beer while awaiting his turn to play pool. While Mena waited, Aguilar played a game of pool against defendant, which led to an argument about the rules of the game. Defendant lost the game. Mena and Aguilar did not know defendant prior to playing against him.

When Mena played defendant, a second argument ensued, also regarding the rules. As the argument continued, Mena told defendant he "was there just to have fun, to play pool, not to look for any type of problems." The bar owner noticed the argument was escalating and stopped the game.

Afterwards, Mena joined Aguilar at the bar. Defendant then approached Mena and Aguilar and began insulting Aguilar and challenging him to a fight. Aguilar and Mena decided to leave, however, on their way out, Orlando Cordero,

2

one of defendant's friends, punched Aguilar in the back of the head. Aguilar went outside to fight Cordero, and defendant also left the bar and ran towards a gas station across the street. Defendant returned and approached Aguilar. Mena attempted to defend Aguilar. Defendant then approached Mena who testified he attempted to "defend[] [him]self with [his foot.]"

Defendant and Aguilar then fought. As defendant approached, Aguilar testified he "grabbed [defendant] and knocked him to the floor." While defendant and Aguilar fought, Mena testified he felt his shirt was wet. He lifted his shirt, touched his stomach and "[saw] that [his] intestines [were] hanging out." He had been stabbed in the torso in three places. Mena ran away from the scene. Aguilar also noticed that he "was full of blood" and was stabbed in two places in the torso and once in the left leg.

Garcia drove Mena and Aguilar to St. Joseph's hospital. Garcia testified he saw defendant fighting Mena and then Aguilar. He then saw Mena holding his stomach as if he was injured. At the hospital, both victims were taken to the trauma unit and underwent emergency surgery. Five months later, Aguilar underwent a second surgery to resect a portion of his intestine due to the earlier injury. He testified he continues to suffer from back pain and "pain in [his] intestines."

A-5023-17T1

Both victims were shown photo arrays and identified defendant as the person who stabbed them.

On appeal, defendant raises the following arguments:

> POINT I – THE TRIAL COURT FAILED TO PROVIDE A PASSION/PROVOCATION INSTRUCTION IN REGARD TO ATTEMPTED MURDER (NOT RAISED BELOW).
>
> POINT II – DEFENDANT WAS NOT PROVIDED THE OPTION OF ELECTING WHETHER HE WANTED A JURY INSTRUCTION REGARDING HIS RIGHT TO REMAIN SILENT (NOT RAISED BELOW).
>
> POINT III – THE COURT SHOULD HAVE INSTRUCTED AS TO SIMPLE ASSAULT (NOT RAISED BELOW).
>
> POINT IV – PROSECUTORIAL MISCONDUCT OCCURRED WHEN THE TRIAL PROSECUTOR ENGAGED IN DISCOURSE WITH ONE OF THE JURORS DURING SUMMATION.
>
> POINT V – THE TRIAL PROSECUTOR COMMITTED PROSECUTORIAL MISCONDUCT WHEN HE COMMENTED ON MATTERS NOT IN EVIDENCE, AND HIS COMMENTS INFLAMED THE JURY.
>
> POINT VI – ADMITTING THE PHOTOGRAPH OF AGUILAR'S INFECTION WAS INFLAMMATORY AND PREJUDICIAL TO DEFENDANT, THEREBY REQUIRING REVERSAL OF THE CONVICTION.

4

POINT VII – THE TRIAL COURT SHOULD HAVE GRANTED THE DEFENSE MOTION AND ORDERED A NEW TRIAL BECAUSE THE VERDICT WAS AGAINST THE WEIGHT OF THE EVIDENCE AND DUE TO THE PREJUDICE TO DEFENDANT CAUSED BY THE USE OF THE TERMS "STABBING" AND "VICTIMS."

POINT VIII – DEFENDANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL IN VIOLATION OF THE SIXTH AND FOURTEENTH AMENDMENTS OF THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 10 OF THE NEW JERSEY CONSTITUTION.

POINT IX – THE CUMULATIVE EFFECT OF THE ERRORS COMMITTED AT TRIAL REQUIRE REVERSAL OF THE CONVICTION.

POINT X – THE SENTENCE IMPOSED WAS MANIFESTLY EXCESSIVE.

I.

Defendant argues the trial judge failed to sua sponte instruct the jury regarding passion provocation on the attempted murder counts, or the lesser-included charge of simple assault. He also argues the judge erred by charging the jury regarding his right to remain silent without giving him the option to waive the charge.

"[T]he court has an 'independent duty . . . to ensure that the jurors receive accurate instructions on the law as it pertains to the facts and issues of each case,

5

irrespective of the particular language suggested by either party.'" State v. Baum, 224 N.J. 147, 159 (2016) (alteration in original) (quoting State v. Reddish, 181 N.J. 553, 613 (2004)). When a defendant fails to object to an error regarding jury charges, we review for plain error. State v. Funderburg, 225 N.J. 66, 79 (2016). "Under that standard, we disregard any alleged error 'unless it is of such a nature as to have been clearly capable of producing an unjust result.'" Ibid. (quoting R. 2:10-2). "The mere possibility of an unjust result is not enough. To warrant reversal . . . an error at trial must be sufficient to raise 'a reasonable doubt . . . as to whether the error led the jury to a result it otherwise might not have reached.'" Ibid. (citation omitted) (quoting State v. Jenkins, 178 N.J. 347, 361 (2004)).

N.J.S.A. 2C:1-8(e) states "[t]he court shall not charge the jury with respect to an included offense unless there is a rational basis for a verdict convicting the defendant of the included offense." "Thus, 'to justify a lesser included offense instruction, a rational basis must exist in the evidence for a jury to acquit the defendant of the greater offense as well as to convict the defendant of the lesser, unindicted offense.'" Funderburg, 225 N.J. at 81 (quoting State v. Savage, 172 N.J. 374, 396 (2002)). However, "[w]hen the parties to a criminal proceeding do not request that a lesser-included offense . . . be charged, the charge should

be delivered to the jury only when there is 'obvious record support for such [a] charge. . . .'" Ibid. (second alteration in original) (quoting State v. Powell, 84 N.J. 305, 319 (1980)).

"A trial court should deliver the instruction sua sponte 'only where the facts in evidence "clearly indicate" the appropriateness of that charge.'" Ibid. (quoting Savage, 172 N.J. at 397). The trial court "need not 'scour the statutes to determine if there are some uncharged offenses of which the defendant may be guilty.'" Ibid. (quoting State v. Brent, 137 N.J. 107, 118 (1994)).

Our Supreme Court held "passion/provocation manslaughter is considered a lesser-included offense of murder: the offense contains all the elements of murder except that the presence of reasonable provocation, coupled with defendant's impassioned actions, establish a lesser culpability." State v. Robinson, 136 N.J. 476, 482 (1994). Attempted passion/provocation manslaughter consists of four elements: "the provocation must be adequate; the defendant must not have had time to cool off between the provocation and the slaying; the provocation must have actually impassioned the defendant; and the defendant must not have actually cooled off before the slaying." Funderburg, 225 N.J. at 80 (alterations in original) (quoting State v. Mauricio, 117 N.J. 402,

411 (1990)).  "The first two criteria are objective, and the latter two are subjective."  Ibid. (citing Mauricio, 117 N.J. at 411).

Thus, "[f]or a trial court to be required to charge a jury sua sponte on attempted passion/provocation manslaughter, the court 'must find first that the two objective elements of [the offense] are clearly indicated by the evidence.'"  Id. at 82 (second alteration in original) (quoting Robinson, 136 N.J. at 491).  "If they are, the two subjective elements should 'almost always be left for the jury.'"  Ibid. (quoting Robinson, 136 N.J. at 490).

"To satisfy the first element of attempted passion/provocation manslaughter, a jury must conclude that a reasonable person in the defendant's position would have been provoked sufficiently to 'arouse the passions of an ordinary man beyond the power of his control.'"  Id. at 80 (quoting State v. King, 37 N.J. 285, 301-02 (1962)).  Thus, "the judge must determine whether a reasonable fact-finder could conclude that the loss of self-control was a reasonable reaction."  State v. Viera, 346 N.J. Super. 198, 212 (App. Div. 2001).

Defendant argues he was entitled to a passion/provocation jury instruction because the trial testimony revealed Mena tried to kick defendant and Aguilar, "grabbed defendant, lifted him up, and threw him onto the ground."  We disagree.

A-5023-17T1

Mena testified that when everyone exited the bar, defendant ran to a gas station across the street before returning to the fight. Mena told defendant not to hit Aguilar, at which point, defendant began approaching Mena instead. After reviewing video footage of the fight, Mena testified as follows:

> Q.   Now having seen that, . . . did you attempt to strike [defendant]?
>
> A.   When I told him not to hit [Aguilar] . . . [h]e came towards me, I defended myself with my foot. We . . . started to have a struggle, we started to fight.
>
> Q.   Okay, . . . when you came at [defendant] . . . did you actually hit him with your foot?
>
> A.   I don't think so. I really don't.
>
> [(emphasis added).]

Mena's testimony demonstrated the attempt to kick defendant was an act of self-defense.

Similarly, the testimony that Aguilar picked defendant up and threw him to the ground demonstrates an act of self-defense because defendant was approaching Aguilar to fight him. Both Mena and Aguilar testified Aguilar grabbed defendant's foot to "protect[] himself" after defendant began to approach him, and Aguilar testified specifically that he "reacted in order to

defend [him]self." Even defendant's friend, Cordero, testified defendant ended up on the ground after defendant "came in to kick one of [the victims.]"

As a general proposition, "[i]f the defendant creates the situation that causes the passion/provocation it will not reduce murder to manslaughter." Cannel, New Jersey Criminal Code Annotated, cmt. 4 on N.J.S.A. 2C:11-4 (2019). Furthermore, "the passion of an assailant aroused as the result of injuries inflicted by his victim attempting to defend himself is, as a matter of law, insufficient to mitigate the assailant's culpability for the resulting [attempted] homicide." State v. Pasterick, 285 N.J. Super. 607, 617 (App. Div. 1995). The credible evidence proved defendant was the provocateur and the victims' reactions were in self-defense. A lesser-included offense charge on attempted passion/provocation manslaughter was not "clearly indicated."

There was also no basis for the trial judge to sua sponte charge the jury on simple assault, under N.J.S.A. 2C:12-1(a)(1) and N.J.S.A. 2C:12-1(a)(2), as a lesser-included offense of aggravated assault. "Simple assault is the least serious of the [N.J.S.A.] 2C:12-1 offenses." Cannel, New Jersey Criminal Code Annotated, cmt. 5 on N.J.S.A. 2C:12-1 (2019). Simple assault occurs when a person "[n]egligently," rather than purposely or knowingly, "causes bodily

injury to another with a deadly weapon." N.J.S.A. 2C:12-1(a)(2). Aggravated assault under N.J.S.A. 2C:12-1(b)(2) excludes negligent acts.

Defense counsel expressly advised the judge he did not seek the instruction for simple assault. Moreover, the State called Dr. Mark Ingram, who treated Mena and Aguilar on the night of the incident. Dr. Ingram testified Mena had "[l]ow blood pressure, lack of blood flow to the brain and organs, [and was] losing consciousness" when he arrived at the hospital. He stated Mena was diagnosed with "multiple stab wounds to the abdomen and was in hemorrhagic shock [and required emergency surgery] [t]o stop the bleeding and save his life." During the surgery, Dr. Ingram observed a large quantity of blood in Mena's abdominal cavity and noticed his "small intestine was lacerated and the blood supply to the small intestine was also lacerated." Dr. Ingram also observed extensive injury to several of Mena's organs caused by the stab wounds.

Aguilar was diagnosed with a stab wound to the abdomen. Dr. Ingram testified he observed nearly a pint of blood inside Aguilar's abdomen during the surgery, a perforation of Aguilar's stomach and diaphragm, and a laceration of the fatty tissue covering the peritoneal cavity. According to Dr. Ingram, the stabbing also caused Aguilar's injuries and, if not treated for his injuries, "[h]e would have bled to death and . . . died."

A-5023-17T1

The evidence clearly proved Mena and Aguilar's injuries were the result of a stabbing caused by a deadly weapon. No evidence was presented to establish defendant acted negligently. The record does not support defendant's argument the jury would acquit him of the aggravated assault charge. The evidence did not support charging "the least serious offense" under N.J.S.A. 2C:12-1(a) or (2).

Although defendant did not object at trial, he now argues the judge erred by instructing the jury on defendant's right to remain silent. He argues defense counsel should have had the opportunity to request the jury instruction or to ask it not be provided.

"The no-adverse-inference jury instruction, or Carter[1] charge, is grounded on the Fifth Amendment privilege against self-incrimination." State v. Camacho, 218 N.J. 533, 542 (2014). Accordingly, our Supreme Court "consistently mandated the trial court's use of the Carter instruction when it is requested by a defendant." Id. at 546. We review errors relating to the charge as "a type of error that concerns the evidentiary value the jury may give to a defendant's election not to testify on his or her own behalf." Id. at 551.

---

[1] Carter v. Kentucky, 450 U.S. 288 (1981).

Here, defendant elected not to testify. The judge advised him on three occasions that if he decided not to testify, he would give the jury a no-adverse-inference charge. Defendant acknowledged he understood his right to remain silent and the instructions the judge would give to the jury if he exercised that right.

The trial judge instructed the jury as follows:

> As you know, [defendant] elected not to testify at trial. . . . You must not consider for any purpose or in any manner in arriving at your verdict the fact that [defendant] did not testify. The fact should not enter into your deliberations or discussions in any manner at any time. The defendant is entitled to have the jury consider all of the evidence presented at trial. He is presumed innocent whether or not he chooses to testify.

Defendant did not object to the charge.

We reject defendant's argument that the judge was required to obtain his consent to charge the jury regarding defendant's right not to testify. "Generally, a defendant waives the right to contest an instruction on appeal if he does not object to the instructions as required by Rule 1:7-2." State v. Adams, 194 N.J. 186, 206-07 (2008). "Where there is a failure to object, it may be presumed that the instructions were adequate." State v. Morais, 359 N.J. Super. 123, 134-35 (App. Div. 2003); see also State v. White, 326 N.J. Super. 304, 315 (App. Div. 1999).

In State v. McNeil, we held a defendant "ha[s] no constitutional right to resist the [no-adverse-inference] instruction." 164 N.J. Super. 27, 31 (App. Div. 1978); see also State v. Lynch, 177 N.J. Super. 107, 115 (App. Div. 1981) (concluding when a defendant did not have the opportunity to consent to the instruction, "inclusion of the charge does not violate [the] defendant's constitutional rights."). For these reasons, the jury instructions were not a basis for reversal.

## II.

Defendant argues the prosecutor engaged in misconduct when he spoke directly with a juror and argued facts not in evidence during summation, by referencing the victims' families, who did not testify at trial. The prosecutor's improper comments did not constitute reversible error.

"'[P]rosecutorial misconduct is not grounds for reversal of a criminal conviction unless the conduct was so egregious as to deprive defendant of a fair trial.'" State v. Wakefield, 190 N.J. 397, 437 (2007) (quoting State v. Papasavvas (I), 163 N.J. 565, 625 (2000)). "Thus, '[t]o justify reversal, the prosecutor's conduct must have been "clearly and unmistakably improper," and must have substantially prejudiced defendant's fundamental right to have a jury

14

fairly evaluate the merits of his defense.'" Id. at 438 (alteration in original) (quoting Papasavvas, 163 N.J. at 625).

> An appellate court, in reviewing the trial record to determine whether the conduct of the prosecutor exceeded these bounds, must consider several factors, including whether "timely and proper objections" were raised, whether the offending remarks "were withdrawn promptly," and whether the trial court struck the remarks and provided appropriate instructions to the jury. Additionally, an appellate court will consider whether the offending remarks were prompted by comments in the summation of defense counsel. If, after completing such a review, it is apparent to the appellate court that the remarks were sufficiently egregious, a new trial is appropriate, even in the face of overwhelming evidence that a defendant may, in fact, be guilty. In contrast, if the prosecutorial remarks were not "so egregious that [they] deprived the defendant of a fair trial[,]" reversal is inappropriate.
>
> [State v. Smith, 212 N.J. 365, 403-04 (2012) (alterations in original) (citations omitted) (quoting State v. Frost, 158 N.J. 76, 83 (1999)).]

Here, the prosecutor played the video of the fight for the jury during his summation, when the following colloquy ensued:

> [PROSECUTOR:] Watch where [defendant] is swinging the knife or swinging whatever he has right there. Pay attention. Where is he swinging? Where is he swinging, ladies and gentlemen? You saw that? You see it again? You saw it? Did you catch it?
>
> [JUROR:] Can you do it again? I didn't see it.

15

[PROSECUTOR:] I'll back it up, I'll back it up a little bit. You know what? I'll do you one better. There's one, there it is again. Did you catch it?

[JUROR:] No.

[PROSECUTOR:] I'll back it up again.

Immediately afterwards, defense counsel objected, and during a sidebar conversation argued the prosecutor was "engaging the jury [in] questioning and answering." The following exchange occurred during sidebar:

> THE COURT: I think it's inappropriate. You should simply go right through without any comment because my instructions will be to them you can't rely on anything more, this is just not evidence, so they should not be focusing on this . . .
>
> [PROSECUTOR:] Yes.
>
> [DEFENSE COUNSEL:] Now I want to reserve my time for surrebuttal because of what occurred.
>
> [PROSECUTOR:] Surrebuttal?
>
> THE COURT: No, I think that the jurors don't even know that there was an objection.

Later in his summation the prosecutor challenged the character witnesses who testified on defendant's behalf as follows:

> Now, there's a couple of things that came up in terms of – in terms of the people that talked about [defendant]. . . .

16

Listen, we all grab [twenty] of our best friends, [twenty] of your cousins and relatives, I guarantee you they're all going to say the same thing about you, that you're one great guy, that you're one great lady, that you're a hell of a person. Why? Because that's how they know you because when you're with your friends and your family you're going to be good to them. You're not going to treat your friends and family wrong, so of course they're going to be here and every one of their experiences they've ever had with [defendant] is going to be great because that's all they ever see from him because he's their friend . . . but you know who would come in here and not have similar sentiments about [defendant]? Alex Mena's family, Alex Mena's wife and kids. They'll come in here and tell you a different story. They'll tell you — they'll paint a different picture about [defendant]. They'll tell you about how this person almost took the life of their loved one. That's what they'll tell you. Same thing for Danny Aguilar. His friends and family will come in and tell you the same thing, that they almost lost their friend.

[(emphasis added).]

Following these comments, defense counsel objected and at sidebar stated "you can't argue to a jury speculative or conjectural testimony." The trial judge agreed and gave the jury the following curative instruction:

Ladies and gentlemen, with regard to [the prosecutor's] comment as to what a family member of the victims would feel about a defendant, that I have stricken from the record. That should not go into, in any shape or form, . . . your discussions and I'm going to also remind you in my general instructions . . . that any comments by either [c]ounsel during openings or

17

closings are not evidence, they are simply arguments, all right?

Our Supreme Court has held "[t]o address jurors individually or by name is generally disapproved and correctly so." Aponte v. State, 30 N.J. 441, 448 (1959); see also Morais, 359 N.J. Super. at 131 (finding reference to a "juror individually by name, experience[,] or background" improper). However, "a 'fleeting and isolated' remark is not grounds for reversal." State v. Gorthy, 226 N.J. 516, 540 (2016) (quoting State v. Watson, 224 N.J. Super. 354, 362 (App. Div. 1988)).

Here, we note it was not the prosecutor who commenced the interaction with the juror, but the juror who made a statement, which prompted the prosecutor's improper response. Regardless, the record does not reveal how the prosecutor's fleeting comment that he would "back . . . up" the video prejudiced or deprived defendant of a fair trial.

Courts consistently recognize "prosecutors are afforded considerable leeway in their closing arguments," however "prosecutors should not make inaccurate legal or factual assertions during a trial and . . . they must confine their comments to evidence revealed during the trial and reasonable inferences to be drawn from that evidence." Smith, 167 N.J. at 177-78.

Here, the prosecutor undisputedly erred when he commented on facts not in evidence. However, defense counsel promptly objected to the prosecutor's comments, and the trial judge struck the prosecutor's comments and issued a curative instruction to the jury, advising it could not consider the prosecutor's comments regarding the victims' families. The timely objection and curative instruction "cured any potential harm caused by [the] speculative remarks." State v. McGuire, 419 N.J. Super. 88, 149 (App. Div. 2011).

## III.

Defendant argues the State admitted a photograph of Aguilar's injuries, which also showed the wound was infected. He argues the image of the infection was irrelevant and inflamed the jury. Defendant argues his motion for a new trial should have been granted because (1) the verdict was against the weight of the evidence and (2) the terms "stabbing" and "victims" were used, implying his guilt and depriving him of a fair trial. He asserts he is entitled to a new trial because Dr. Ingram had no personal knowledge of how the victims were injured, yet the State improperly used his testimony to establish "an evidentiary nexus between the issue of causation and whether defendant caused the medical injuries [Dr. Ingram] observed."

"[I]n reviewing a trial court's evidential ruling, an appellate court is limited to examining the decision for abuse of discretion." State v. Kuropchak, 221 N.J. 368, 385 (2015) (quoting Hisenaj v. Kuehner, 194 N.J. 6, 12 (2008)). Under that standard, "[c]onsiderable latitude is afforded a trial court in determining whether to admit evidence," and "an appellate court should not substitute its own judgment for that of the trial court, unless 'the trial court's ruling was so wide of the mark that a manifest denial of justice resulted.'" Ibid. (alteration in original) (quoting State v. Feaster, 156 N.J. 1, 82 (1998); State v. Marrero, 148 N.J. 469, 484 (1997)). To exclude photographic evidence on grounds of prejudice, "the danger of undue prejudice must outweigh probative value so as to divert jurors 'from a reasonable and fair evaluation of the basic issue of guilt or innocence.'" State v. Moore, 122 N.J. 420, 467 (1991) (quoting State v. Sanchez, 224 N.J. Super. 231, 249-50 (App. Div. 1988)).

Over defendant's objection, the trial judge concluded the photographic evidence was probative because it showed the extent of Aguilar's injuries and was relevant to determining whether he suffered bodily injury by a deadly weapon, an element of aggravated assault, N.J.S.A. 2C:12-1(b)(2). The trial judge did not abuse his discretion.

Rule 3:20-1, states:

> The trial judge on defendant's motion may grant the defendant a new trial if required in the interest of justice. . . . . The trial judge shall not, however, set aside the verdict of the jury as against the weight of the evidence unless, having given due regard to the opportunity of the jury to pass upon the credibility of the witnesses, it clearly and convincingly appears that there was a manifest denial of justice under the law.

"[A] motion for a new trial is addressed to the sound discretion of the trial judge, and the exercise of that discretion will not be interfered with on appeal unless a clear abuse has been shown." State v. Russo, 333 N.J. Super. 119, 137 (App. Div. 2000). Our review "is limited to a determination of 'whether the findings made by the trial court could reasonably have been reached on sufficient credible evidence in the record.'" State v. Brooks, 366 N.J. Super. 447, 454 (App. Div. 2004) (quoting Russo, 333 N.J. Super. at 137).

Defendant argues the trial judge committed reversible error in allowing the prosecutor and witnesses to use the terms "victims" and "stabbing" when describing the incident. He argues these terms were highly prejudicial and tainted the presumption of innocence by placing an "unfair suggestion of guilt . . . into the minds of the jurors."

The trial judge addressed this argument in evaluating defendant's motion for a new trial and concluded as follows:

21

The State submits and the [c]ourt concurs that such an argument has no merit. . . . . There is no basis to suggest that the wounds that both victims suffered were self-inflicted. On the contrary, it is undisputed that both . . . Aguilar and Mena were stabbed. As such, referring to Aguilar and Mena as victims and referring to the incident as stabbing was appropriate and in no way contaminated the jury from the presumption of innocence. Throughout the trial it was known and undisputed that Aguilar and Mena were stabbed.

The issue which needed to be addressed was whether the person who stabbed them was the defendant. At no point during the trial [was there] a deviation from the fundamental principle of the criminal justice system that the State needs to prove and has the ultimate burden to prove beyond a reasonable doubt that the victims were stabbed and that the defendant was the one that did the stabbing. Referring to Mena and Aguilar as victims did not change the burden that was placed on the State nor did referring [to] the incident as a stabbing shift that burden.

. . . .

In short, the [c]ourt is clearly convinced that any reference during the trial to either Aguilar or Mena or both as victim or victims or the injuries they suffered as a result of stabbing was appropriate and not prejudicial at all. It neither contaminated the jury in any manner nor shifted the burden from the State to the defendant. Furthermore, its use did not result in defendant suffering a manifest denial of justice by the jury's verdict.

The trial judge also rejected defendant's argument regarding Dr. Ingram's

testimony. The judge stated:

The [c]ourt finds this argument is without merit. The defense incorrectly defines the testimony presented by Dr. Ingram in this matter and the manner in which it was used by the State.

Dr. Ingram was called in as an expert witness in this trial to identify whether the injuries suffered by the victims could rise to the level of being serious bodily injury. Dr. Ingram's testimony cannot be characterized as expert testimony establishing the identity of an individual who had committed the stabbing upon Aguilar and Mena. Instead, Dr. Ingram's testimony focused on the injuries suffered by the victims.

. . . .

The [c]ourt finds that the testimony provided by Dr. Ingram was utilized by the State to satisfy the injury element of the charges against the defendant. . . . There is nothing in the evidence to suggest that Dr. Ingram's testimony was used to identify the actor who caused these injuries. In fact, during cross-examination when defendant's former counsel asked Dr. Ingram whether he knew who caused the injuries Dr. Ingram responded that he did not.

The trial judge did not abuse his discretion in denying the motion for a new trial. We affirm for the reasons expressed in the judge's comprehensive and well-reasoned decision.

IV.

Defendant argues he was denied effective assistance of trial counsel because counsel: (1) failed to request the lesser-included simple assault charge;

(2) failed to file a motion in limine to prevent the prosecution from using the words "stabbing," "knife," and "victims;" (3) wanted to withdraw because he was not being paid; and (4) failed to bar Dr. Ingram's testimony. Defendant asserts these cumulative errors justify reversal.

"'Our courts have expressed a general policy against entertaining ineffective-assistance of counsel claims on direct appeal because such claims involve allegations and evidence that lie outside the trial record.'" State v. Castagna, 187 N.J. 293, 313 (2006) (quoting State v. Preciose, 129 N.J. 451, 460 (1992)). "However, when the trial itself provides an adequately developed record upon which to evaluate defendant's claims, appellate courts may consider the issue on direct appeal." Ibid.

A defendant seeking to vacate a conviction on the grounds of ineffective assistance of counsel must show that: (1) counsel's performance was deficient; and (2) the deficiency prejudiced the defense. State v. Nash, 212 N.J. 518, 542 (2013). "A deficient performance means that 'counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.'" Ibid. (quoting Strickland v. Washington, 466 U.S. 668, 687 (1984)). Moreover, proof of prejudice must create "a reasonable probability

that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694.

Judicial scrutiny of counsel's performance is highly deferential. "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." Id. at 690. The strong presumption counsel exercised sound trial strategy is grounded in "the inherent difficulties in evaluating a defense counsel's tactical decisions from his or her perspective during trial. . . ." State v. Arthur, 184 N.J. 307, 319 (2005).

We do not address defendant's claim defense counsel and defendant's family were at odds because of defense counsel's desire to withdraw from the case due to lack of payment. There is no evidence in the record to enable us to effectively evaluate this claim and it is better presented on a petition for post-conviction relief.

We reject defendant's claim that the use of the terms "knife," "victim," and "stabbing" during the trial was evidence of ineffective assistance of counsel. The credible evidence presented at trial demonstrated Mena and Aguilar were the victims of a stabbing. Moreover, defense counsel did object to the use of

the words "victim" and "stabbing" at trial, his objection was overruled, and as we noted, the trial judge's decision was not an abuse of discretion.

Defense counsel was not ineffective for failing to exclude Dr. Ingram's testimony. Although counsel initially objected, but then withdrew the objection, the doctor's testimony was entirely appropriate expert testimony explaining the nature of the victims' injuries. Moreover, the trial judge explained why the failure to move to exclude the doctor's testimony prior to trial did not constitute ineffective assistance of counsel. He stated:

> The [c]ourt . . . characterizes defense counsel's decision to bring up the substance of these motions during trial rather than pre-trial as merely trial strategy. Even if these motions were successful[,] such limiting of testimony or the use of the phrase would not have changed the ultimate outcome of the trial based on the other evidence that was provided in this case.
>
> The jury would still have been able to see both videos . . . [showing] the defendant walking to his car and returning. What the State would have been permitted to argue was the knife that was used in this case. [The jury] would have seen the defendant thrust at both victims in the area where they were found to have been stabbed.
>
> . . . .
>
> Also, the jury would have heard the testimony of Dr. Ingram describing the steps he took to repair the damage that was caused. Lastly, they would have heard

Dr. Ingram opine that but for his intervention both victims would have died.

With the totality of the evidence presented at trial, even with the motion to limit certain testimony, the [c]ourt finds the outcome of this trial would not have changed. As such, the second prong of the Strickland test[,] that is but for the counsel's unprofessional errors the result would have been different[,] cannot be met.

We affirm for the reasons the trial judge expressed. Defendant's claim of cumulative error fails because we found error only in the prosecutor's summation, and that error is insufficient to reverse.

V.

Finally, defendant argues his sentence was excessive because the judge misapplied the aggravating and mitigating factors by counting factor two twice. He asserts the court should not have found aggravating factors three or nine. Defendant contends the court failed to find mitigating factors two, three, five, and eight. He argues he should have been sentenced one degree lower and his sentences should have run concurrently.

We review a judge's sentencing decision under an abuse of discretion standard. State v. Pierce, 188 N.J. 155, 169-70 (2006). We "may not substitute [our] judgment for that of the trial court, but [we] may review a sentence to determine if the trial court violated the sentencing guidelines." State v. Johnson,

118 N.J. 10, 15 (1990) (citations omitted). We may review and modify a sentence "only when the court's determination was 'clearly mistaken.'" State v. Jabbour, 118 N.J. 1, 6 (1990) (quoting State v. Jarbath, 114 N.J. 394, 401 (1989)). A trial judge is given "wide discretion" to impose a sentence, provided it is within the statutory framework, and we must give that decision "great deference." State v. Dalziel, 182 N.J. 494, 500-01 (2005). Our role is to assure the sentencing guidelines were met, the findings on aggravating and mitigating factors are based upon "competent credible evidence in the record," and the sentence is not "clearly unreasonable so as to shock the judicial conscience." Id. at 501 (quoting State v. Roth, 95 N.J. 334, 364-65 (1984)).

The trial judge sentenced defendant to two consecutive ten-year terms of incarceration on each count of attempted murder, subject to the No Early Release Act, N.J.S.A. 2C:43-7.2. Applying the statutory factors set forth in N.J.S.A. 2C:44-1(a) and (b), the judge found aggravating factors one, two, three, and nine, and mitigating factors seven, nine, and ten. Defendant did not present compelling reasons to downgrade the first-degree charges. See State v. Megargel, 143 N.J. 484, 502 (1996). Because the judge imposed the minimum legal term on each first-degree attempted murder charge, we need not scrutinize the individual sentencing factors.

In State v. Yarbough, our Supreme Court identified the criteria for determining when consecutive, as opposed to concurrent, sentences should be imposed, namely:

> (a) the crimes and their objectives were predominantly independent of each other;
>
> (b) the crimes involved separate acts of violence or threats of violence;
>
> (c) the crimes were committed at different times or separate places, rather than being committed so closely in time and place as to indicate a single period of aberrant behavior;
>
> (d) any of the crimes involved multiple victims; [and]
>
> (e) the convictions for which the sentences were imposed are numerous.
>
> [100 N.J. 627, 643-44 (1985) (footnote omitted).]

These factors "should be applied qualitatively, not quantitatively." State v. Liepe, 453 N.J. Super. 126, 137 (App. Div. 2018) (quoting State v. Carey, 168 N.J. 413, 427 (2001)). A consecutive sentence may be imposed, even if a majority of the Yarbough factors support concurrent sentences. Carey, 168 N.J. at 427-28. The fairness of the overall sentence should be considered in reviewing the imposition of consecutive sentences. State v. Sutton, 132 N.J. 471, 485 (1993).

29

Here, the trial judge imposed consecutive sentences,

> [b]ecause these crimes involved two separate acts of violence involving two separate victims, both of whom were stabbed by this defendant during that September 13[], 2014 incident, both victims suffered serious injury as a result of defendant's conduct and if it wasn't for the medical intervention both would have bled to death. So, the [c]ourt finds for those reasons . . . that running this consecutive as to factor number one, there shall be no crimes which means if the count one and count three were to run concurrent it essentially translates to the sentence is only for one victim, not the other and, as such, the other crime will be what is considered as a free crime in the system.

The judge evaluated the remaining Yarbough factors, and concluded "under the circumstances[,] defendant's application for concurrent [sentences] is hereby denied" and ordered the minimum consecutive sentences for each of defendant's offenses.

The judge did not err.  "[C]rimes involving multiple victims represent an especially suitable circumstance for the imposition of consecutive sentences because the 'total impact of singular offenses against different victims will generally exceed the total impact on a single individual who is victimized multiple times.'"  State v. Molina, 168 N.J. 436, 442 (2001) (quoting Carey, 168 N.J. at 428).  "[T]he multiple-victims factor is entitled to great weight and

should ordinarily result in the imposition of at least two consecutive terms."

Ibid. (quoting Carey, 168 N.J. at 429-30).

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION